(No. 5235.   December 29, 1928.)

STATE, Respondent, v. EDWIN T. ALVORD, Appellant.

[272 Pac. 1010.]

W. A. Ricks, for Appellant.

Frank L. Stephan, Attorney General, and Leon M. Fisk, Assistant Attorney General, for Respondent.

TAYLOR, J.—Defendant appeals from a judgment of conviction of rape, and an order denying a motion for new trial. The evidence shows that the prosecutrix, not quite fifteen years of age, went from Rexburg in a car in company with another girl and a young man to the defendant's home, some miles in the country, reaching there about 8 o'clock in the evening. There were present another young man and

a girl and the defendant. The defendant was fifty-six years of age. These people sat in the kitchen of the house for a few minutes, during which time some records were played on a phonograph. The prosecutrix, over objection, testified that the defendant tried to get her to drink some whiskey, but that she did not take it; that this happened before the playing of the phonograph. This evidence of liquor was objected to, and the motion made to strike it, and admonish the jury "to pay no attention to it, and not to consider it in their deliberations." Another witness, one of the girls present, testified later that the defendant brought in a pint bottle of whiskey and offered the girls and boys a drink; that she and the prosecutrix refused to drink, but that others present drank whiskey. This evidence was not objected to at the time, but at the close of this witness' testimony, a motion was made to strike it as incompetent, irrelevant and immaterial. The prosecution contended that this evidence was admissible "to show the intent" and as "part of the *res gestae*," and that "the commission of another crime may be proved where it goes or tends to connect up the other crime; where it shows it is a part of the *res gestae*." "It all goes to show a preconceived plan on the part of the defendant." The evidence further showed that within a short time, the two young men present each repaired to a separate bedroom with one of the girls, leaving the prosecutrix alone in the kitchen with defendant, where, she testified, she had sexual intercourse with him. Shortly after this, the young people left the defendant's house, the entire time of the visit having been about one-half or three-quarters of an hour.

The first assignment of error is that:

"The court erred in permitting, over objection, the witnesses to testify that the appellant had given them intoxicating liquor, or in admitting evidence that intoxicating liquor was consumed, both before and after the alleged criminal act, for the reason that the evidence of the intoxicating liquor had no connection whatever with the alleged crime and only tended to prejudice the appellant in the minds

of the jurors and prevent the appellant from having a fair and impartial trial.''

There was no evidence that liquor was either given to anyone or consumed after the alleged rape. All of the evidence was of the time a few minutes prior thereto.

The state contends:

(a) That this evidence was admissible as a part of ''a complete detailed narrative'' of the offense charged; that the offense of offering the liquor was so intermixed, commingled, and blended with the offense charged that they form ''an indivisible transaction''; and that a ''full and complete recital of the facts'' could not be given without reciting evidence as to the liquor.

(b) That it was admissible as a ''part of the *res gestae* and aiding in the development of the transaction.''

(c) That ''the furnishing of the liquor was an essential part of the scheme or design to accomplish'' sexual intercourse, and that this evidence has ''a tendency to support a conclusion that appellant contemplated committing the crime'' of rape.

(d) That it ''tends to throw light upon the evidence of the commission of the offense charged.''

As Wigmore points out, under the ''principle of Multiple Admissibility, . . . . the inadmissibility of an evidential fact for one purpose does not prevent its admissibility for any other purpose otherwise proper.'' (1 Wigmore on Evidence, 2d ed., sec. 215.) ''If evidence is relevant and competent, it should be admitted regardless of its incidental effect.'' (22 R. C. L., p. 1204, sec. 39.)

There has been much inaccuracy of expression in decisions considering the admissibility of such evidence, and in defining ''*res gestae*'' and determining what acts or facts bring the evidence thereof within the term ''*res gestae*.'' In *Hunter v. State*, 40 N. J. L. 495, 536, it is said:

'' . . . . There are few problems involved in the law of evidence more unsolved than what things are to be embraced in those occurrences that are designated in the law as the

*res gestae.* The adjudications on the subject, more especially those in this country, are perplexingly variant and discordant. . . . . This result has grown out of the difficulty of applying, with anything like precision, general rules to a class of cases of infinite variety."

Speaking of proof of inseparable acts, though one of them is the crime charged and the other an additional crime, Wigmore (section 218) says this class of cases "includes other criminal acts which are an inseparable part of the whole deed," and further:

"The phrase *'res gestae'* is sometimes used to sanction the admission of such acts, but it merely serves to obscure thought and to confuse principle. Either the act is an inseparable part of the main act or *'res gestae'* in which case it has no evidential function; or it serves to evidence intent or the like, in which case it must be tested by the foregoing principles. This latter purpose is often the one really in mind when this phrase is used,—as where the other act is said to 'color' or 'characterize' the main act charged; obviously this is an evidential use, throwing light on the intent, and the phrase *'res gestae'* not only has no real application but introduces a loose and unworkable test." (1 Wigmore on Evidence, 2d ed., sec. 365.)

Wigmore further says of the term:

"It is sometimes said that such acts are provable as a part of the *'res gestae.'* But this phrase is unsatisfactory, first, because it is obscure and indefinite, and needs further definition and translation before either its reason or its scope can be understood; and, secondly, because its very looseness and obscurity lend too many opportunities for its abuse. It is not too much to say that it is nowadays most frequently used merely as a cover for loose ideas and ignorance of principles. It is occasionally used to admit acts whose real function is to show Intent or Motive or Design. But the result is only to make rulings on evidence arbitrary and chaotic, when we ignore the correct purposes of admission and substitute an indefinite and meaningless phrase of this

sort.'' (1 Wigmore on Evidence, 2d ed., sec. 218, pp. 465, 466.)

The record refutes argument that the two crimes were so ''mixed and commingled'' as to render it difficult or impossible to separate them, or narrate the offense charged without the other. The state had once completed its direct evidence of the prosecutrix without eliciting this evidence, and it may readily be seen that this could have been easily omitted where it appears. The same case of elimination of the evidence of the other girl witness as to liquor is apparent.

This evidence must be justified, if at all, by its relevancy. To say that a matter is part of so-called *res gestae*, or is part of a detailed narrative, or is admissible because of ''aiding in the development of the transaction,'' or to ''throw light upon the evidence of the commission of the offense charged,'' is inaccurate and tends to lose sight of the true test of relevancy to prove a material issue.

There is likewise some diversity of expression as to the degree in which, to be admissible, proof of another crime must tend to establish its character as proof of such plan, design, scheme or other relevant element of the offense charged. Underhill's Criminal Evidence, 3d ed., sec. 152, p. 199, says:

''The connection must appear from the evidence. Whether any connection exists is a judicial question. If the court does not clearly perceive it, the accused should be given the benefit of the doubt and the evidence should be rejected.''

The same author, however, elsewhere says:

''And it is a rule that evidence of connected, precedent, or surrounding circumstances is proper to show the probability that the principal fact has happened in all cases where it may naturally be assumed that a connection exists between the main fact and the subordinate fact.'' (Underhill's Criminal Evidence, 3d ed., sec. 160, pp. 213, 214.)

Justice Brewer, in *State v. Adams,* 20 Kan. 311, says:

" . . . . Whatever testimony tends directly to show the defendant guilty of the crime charged, is competent, although it also tends to show him guilty of another and distinct offense. . . . . A party cannot, by multiplying his crimes, diminish the volume of competent testimony against him.''

The use of the word ''directly'' in the foregoing quotation, must be viewed in the light that the evidence there offered did tend ''directly'' to show the defendant guilty of the crime charged. However, later in the opinion appears language more apt to the test to be applied:

"If no act or conduct of the defendant could be shown, unless the motive therefor, or the connection between it and the crime, were made undisputably clear, the range of inquiry would be limited and narrow. It is enough that the act has an apparent or probable connection with the crime; and then the motive of the defendant, and the weight of it as testimony, are to be considered by the jury.''

Statements illustrative of Wigmore's censure as ''a loose and unworkable test,'' as to either the *res gestae* or the degree to which the proof must tend to establish a material issue, are such as, ''it is competent and proper also to show any accompanying act . . . . which relates to or is explanatory of such fact or event'' (*Davids v. People,* 192 Ill. 176, 61 N. E. 537), that such fact must in some way ''qualify, explain, or characterize'' that act (*Commonwealth v. Trefethen,* 157 Mass. 180, 31 N. E. 961, 24 L. R. A. 235), or that what occurred at the time, ''constituting one continuous transaction,'' is admissible as *res gestae* (*Williams v. State,* 147 Ala. 10, 41 So. 992), or ''events incident to the main transaction'' (*Sullivan v. State,* 58 Neb. 796, 79 N. W. 721). Such expressions have likewise contributed to ''adjudications . . . . perplexingly variant and discordant'' (*Hunter v. State, supra.*)

The court of criminal appeals of Texas has gone so far as to be said by one of its members to have departed from any strict rule as to the admissibility of such evidence, and thus to have no rule; that admissibility of such evidence has been

left to the discretion of the trial court which, if not abused, will be affirmed. (*Freeman v. State*, 40 Tex. Cr. 545, 46 S. W. 641, 51 S. W. 230.)

Somewhere between the rule stated by Underhill and this loose statement of discretion, must be found the test. Matters or facts "collateral to the issue to be tried," which afford "no legal presumption or inference as to the particular crime charged," should be excluded. (*Boyd v. United States*, 142 U. S. 450, 12 Sup. Ct. 292, 35 L. ed. 1077.)

After citing a number of decisions more accurately stating the principles from which a composite rule may be drawn, Wigmore arrives at the correct general principle, as follows:

"The general principle is that all facts affording any reasonable inference as to the act charged are relevant and admissible, including facts showing design, motive, knowledge, or the like, where these matters are in issue or relevant. To this general principle there is the important exception, that conduct tending and offered to show bad moral character as evidence is inadmissible. Thus, so long as we avoid the realm of this exception and do not seek to attack the defendant's character, we are within the scope and sanction of the great general principle. We are in no sense saved by a mere exception; and we are further reenforced by the fundamental canon that admissibility for one purpose is not affected by 'inadmissibility for another." (1 Wigmore on Evidence, 2d ed., sec. 216, pp. 461, 462.)

In *Dennison v. State*, 17 Ala. App. 674, 88 So. 211, it is said:

"The rule . . . . which requires that all evidence which is introduced shall be relevant to the guilt or the innocence of the accused, is always applied with considerable strictness in criminal proceedings."

It has been said that "good practice" requires that:

" . . . . When evidence is offered tending to prove that the defendant has committed an offense other than that for

which he is on trial, . . . . the prosecuting attorney should state the purpose for which the evidence is offered, and, if it is admissible for that purpose, the trial court, in the instructions given, when requested by the defendant, should instruct the jury as to the purpose for which they may consider such evidence." (*State v. Rule,* 11 Okl. Cr. 237, 258, 144 Pac. 807, 815.)

No such error in practice is here assigned, or could be on the record. The defendant did not ask such instruction, but that the jury be instructed "to pay no attention to" the evidence, and "not consider it in their deliberations." Both of the foregoing citations are simply to further illustrate that "greater care and caution is thus called for in applying in this class of evidence the tests of relevancy." (1 Wigmore on Evidence, 2d ed., sec. 216, p. 462.)

Of course, as said by Underhill above, "whether any connection exists is a judicial question." This principle has led to some inaccuracy in expressions as to the discretion of the trial court. Wigmore intimates that it is a matter to be left to the judicial discretion of the trial court, saying:

"Most evidence of this sort needs no judicial ruling to determine its relevancy, and the precedents deal with only a limited number of the possible uses of such evidence. The discretion of the trial court should control in all these cases; it is impossible to lay down any general rule that will be definite enough to serve as a solution for each instance; and it is poor policy to attempt in a Supreme Court to pass upon the probative value of each given piece of conduct.

"Any attempt to reconcile all the rulings is hopeless; there is no reason why they should be treated as binding precedents. The question is always one of experience and common sense in each case." (1 Wigmore on Evidence, 2d ed., sec. 238, p. 494.)

However, this intimation is qualified by a previous statement as follows:

"Now discretion, in this strict sense (Finality), is by our law not conceded to any trial judge on points of evidence,

except perhaps in *'ex parte'* and interlocutory proceedings. The whole spirit of our law requires the observance of precedents.'' (1 Wigmore on Evidence, 2d ed., sec. 16, p. 166.)

The resulting point made by the foregoing is that minds of the trial courts and of appellate courts may differ as to the reasonable, logical tendency of evidence to establish a given fact, and thus as to its relevancy, and that while there is no finality to the discretion of the trial court on the point of evidence, the appellate court should hesitate to superimpose its judgment to the contrary as to the probative value of the evidence, except as a matter of law, based upon established precedents.

In exercising that ''greater care and caution . . . . called for in applying to this class of evidence the tests of relevancy,'' it is well to consider, with such caution, whether that which is contended to be a material fact or issue is reasonably and logically such, i. e., does its existence or proof tend by any reasonable inference to establish the main issue, the offense charged, or a material element thereof? Does the evidence by any reasonable inference tend to establish such material fact in issue? If these two questions can be answered in the affirmative, then the evidence is relevant, whether direct or circumstantial (*Commonwealth v. Robinson*, 146 Mass. 571, 16 N. E. 452), and is not to be excluded simply because it tends also to establish another crime.

Evidence of a plan or design or scheme put into execution is relevant, if it tends by reasonable inference to establish the commission of the crime charged. Likewise, evidence of acts the proof of which tends by reasonable inference to establish that they were committed in execution of a plan or design, is proof tending to establish the plan or design, which, coupled with other evidence of the later execution, in consummation of the crime charged, make such evidence relevant. Speaking of this kind of evidence, Wigmore (section 304) says:

'' . . . . The result is to show (by probability) a precedent design which in its turn is to evidence (by probability)

the doing of the act designed." (See, also, 1 Wigmore on Evidence, 2d ed., secs. 102, 106, 238.)

Let us consider this evidence with the assumption, for the moment, that such act constituted no crime. If such were the case, the reasonableness and logic of the tendency of such evidence would probably not be doubted. The defendant was fixty-six years of age. That an offer of liquor to a girl so young, and to the others present, might tend reasonably and logically to proof of a plan and its execution, to bring about this sexual intercourse, would hardly be questioned. Dismissing, for the moment, the evil of such offer, unaccompanied by a plan or scheme, if such offer could be considered as entirely without evil except as connected with, and the possible use of the liquor for, the purpose and plan of bringing about sexual intercourse, nevertheless, the offer cannot be said, as a matter of law, to have no legal or logical tendency, or afford no reasonable inference, to establish that the defendant planned by its use to accomplish his purpose, and offered and gave it in execution of such plan to bring about this sexual intercourse, of which subsequent direct evidence was given. This conclusion is supported by decisions in *Travelstead v. State*, 105 Tex. Cr. 101, 287 S. W. 53; *Tinker v. State*, 95 Tex. Cr. 143, 253 S. W. 531; Id., 99 Tex. Cr. 369, 269 S. W. 778; *Adams v. State*, 95 Tex. Cr. 226, 252 S. W. 797; *Thaler v. United States*, 261 Fed. 746. (See, also, *Reg. v. Camplin*, 1 Cox. C. C. 220.) If the girl had partaken of the liquor, there would be even less question of such logical tendency of the evidence. The fact that she did not, does not destroy the reasoning.

In answer to the argument that, even though the evidence of an offer to the prosecutrix of intoxicating liquor might be admissible, an offer to the others present was evidence of still another crime, and in no way relevant, it is not inconceivable that the defendant, in his offer to other young girls present, or to the boys or persons present, intended to set an example for the prosecutrix, or to so influence those

present that they would, by example of their conduct, influence the prosecutrix, or absent themselves, as they apparently did, or that they might become inattentive to the conduct of the defendant and prosecutrix, which apparently happened. It cannot be said that this evidence was not admissible on the same reasoning which supports that of the prosecutrix.

The second assignment of error is as follows:

"The court erred in permitting the prosecutrix to testify that appellant had told her he had made assault upon other girls for the reason that such testimony did not tend in any way to prove the charge set forth in the information and could only tend to arouse the anger of the jury against the appellant."

Counsel evidently misunderstood the testimony. Prosecutrix testified that while she and defendant were alone in the kitchen, and just before the act of intercourse, defendant told her that he had some "doctor instruments" in the house; that he was treating two other girls; and that if she (the prosecutrix) were going to have a baby and needed any help, if she would come to him he would help her. In his reply brief, counsel for appellant says this statement was made after the alleged intercourse. He is mistaken; the witness testified distinctly that it was before. This testimony, concerning a statement made a few minutes before the criminal act as an inducement to submit, was admissible as tending to establish a plan or design, and its execution. (*State v. Putney,* 110 Or. 634, 224 Pac. 279; *People v. Davis,* 6 Cal. App. 229, 91 Pac. 810; *Hagood v. State,* 106 Tex. Cr. 450, 292 S. W. 904; *State v. Bebb,* 125 Iowa, 494, 101 N. W. 189.) The fact that, in his argument to the prosecutrix of the efficacy of his ability to treat her, he said that he was treating two other girls, does not render that statement inadmissible, if, as it did, it might reasonably tend to establish the use of a persuasive argument to induce the prosecutrix to submit.

██ The assignment of error in the refusal to allow defendant's counsel to cross-examine the prosecutrix "about other acts of intercourse" to affect her "credibility" is untenable. (*State v. Hammock*, 18 Ida. 424, 110 Pac. 169.)

██ Error is assigned in permitting the prosecuting attorney to ask leading questions of the prosecutrix. This is a matter largely in the discretion of the trial court. Many of defendant's objections to leading questions were sustained, and the questions that were permitted were apparently rendered necessary by the timidity and diffidence of the prosecutrix. The court did not abuse its discretion. (*State v. Garney*, 45 Ida. 768, 265 Pac. 668.)

Another assignment urges (1) that the testimony of the prosecutrix was improbable, unnatural, unreasonable, and unworthy of belief, and was uncorroborated, and (2) that the testimony of a specified witness for the state, was "as a matter of law unworthy of belief, and insufficient corroboration," because his testimony showed that "he was trying to curry favor with the officials, and thus fend off prosecution or obtain immunity on a charge of rape preferred against him."

██ The testimony of the prosecutrix cannot be said, as a matter of law, to be so improbable, unnatural, or unreasonable as to be unworthy of belief, and its weight was for the jury. The prosecutrix was corroborated by the surrounding circumstances and the testimony of a witness as to a statement of defendant to him a few minutes after the alleged commission of the act. We need not repeat this statement. It carried with it, however, in view of the other testimony, a sufficient meaning to give it weight as evidence, and was not so meaningless or indefinite or uncertain of meaning as to deprive it of weight as corroboration.

██ The testimony of this other witness was not "as a matter of law unworthy of belief." The weight of his evidence, coupled with the fact that he was himself accused of rape, was for the jury, and if the witness were believed by the jury, which is apparent, his evidence constituted sufficient corroboration.

The sixth assignment is this:

"The court erred, upon application, in refusing to instruct the jury that appellant might be found guilty of simple assault for the reason that simple assault is included in a charge of rape."

Appellant relies on *State v. Garney, supra.* The argument is based on the premise that the jury, if so charged, might have found him guilty of simple assault. The jury was charged on the law of rape, attempt to commit rape, and assault with intent to commit rape. If the jury had found the defendant guilty of an offense next in degree above that of simple assault, this might support argument that they might have found him guilty of a simple assault, if instructed that they could do so. But with the option of finding him guilty of an intervening degree of crime, they refused it, and found him guilty of rape. Thus, there is no reasonable probability that they would have rendered a verdict of guilty of simple assault had they been instructed as requested. Assuming, for the sake of argument, that the instruction should have been given, yet in this case it is not reversible error. See *State v. Hardisty*, 121 Kan. 576, 249 Pac. 617.

Error is assigned in the refusal of an instruction. The court gave the following instruction:

"If you believe that a witness, or any number of witnesses, have wilfully and knowingly testified falsely in regard to any material matter, you may disregard such witnesses' testimony entirely, unless corroborated by other credible evidence, or by facts or circumstances appearing in the case."

It was not error to refuse the requested instruction, which was substantially the same except that it omitted the phrase, "unless corroborated by other credible evidence, or by facts or circumstances appearing in the case." The instruction given was not specified as error, and has been held substantially correct. (*State v. Brassfield*, 40 Ida. 203, 232 Pac. 1; *State v. Boyles*, 34 Ida. 283, 200 Pac. 125; *Baird v. Gibberd*, 32 Ida. 796, 189 Pac. 56.)

We have considered assignments of error Nos. 8, 9, 10, and 11, and find them without merit. The evidence submitted on motion for new trial, as to someone having signalled to the prosecutrix during the trial, and as to the drawing of the jury, was peculiarly a matter to be weighed by the trial court, and its ruling, upon ample evidence to sustain it, will not be disturbed. The record shows no sufficient evidence of impropriety on behalf of the prosecuting attorney to reverse the trial court in denying a new trial on that point.

Error is assigned "in refusing to grant a new trial for the reason that the sentence is excessive, and cannot be justified from any view." That a sentence is excessive is not ground for motion for new trial, nor can the sentence be said to be excessive as a matter of law. (C. S., sec. 8265.)

The judgment and order denying the motion for a new trial are affirmed.

Wm. E. Lee, C. J., Budge and Givens, JJ., and Hartson, D. J., concur.