**IN THE COURT OF APPEALS OF THE STATE OF IDAHO**

**Docket No. 37584**

| | | |
|---|---|---|
| **STATE OF IDAHO,** | ) | **2012 Opinion No. 14** |
| | ) | |
| **Plaintiff-Respondent,** | ) | **Filed: March 13, 2012** |
| | ) | |
| v. | ) | **Stephen W. Kenyon, Clerk** |
| | ) | |
| **RONALD L. COLEMAN,** | ) | |
| | ) | |
| **Defendant-Appellant.** | ) | |
| | ) | |

Appeal from the District Court of the Seventh Judicial District, State of Idaho, Custer County. Hon. William H. Woodland, District Judge.

Judgment of conviction for sexual abuse of a minor under the age of sixteen, <u>vacated</u> and <u>remanded</u>.

Sara B. Thomas, State Appellate Public Defender; Elizabeth Ann Allred, Deputy Appellate Public Defender, Boise, for appellant.

Hon. Lawrence G. Wasden, Attorney General; Lori A. Fleming, Deputy Attorney General, Boise, for respondent.

_____

GRATTON, Chief Judge

Ronald L. Coleman appeals from the judgment of conviction entered upon a jury verdict finding him guilty of sexual abuse of a child under the age of sixteen, Idaho Code § 18-1506.

**I.**

**FACTUAL AND PROCEDURAL BACKGROUND**

Coleman was charged with sexual abuse of a child under sixteen relative to an incident in which he exposed his penis to the seven-year-old daughter of a family friend. The child described the incident in her testimony at trial. She testified that they were playing alone together in a junkyard when they found a calendar containing pictures of topless women. Coleman asked the child if she liked the pictures and compared the stomach of one of the women to the child's stomach. Coleman began talking about sex and said, "I wish you were my age so I can just do it." He talked to her about her anatomy and sex acts. He told her that women get pregnant from sex. He pulled her legs apart and touched her vaginal area, which the child

1

perceived as an accident because it happened very quickly and he apologized. Coleman told the child not to tell anyone what they talked about. At the end of the conversation, he stated that it was "time to go pee," walked from the driver's side to the passenger side of the abandoned car where the child was still seated and urinated in front of her, exposing his penis to her in the process. Coleman asked the child if she wanted to hold it and she said "no" and that she was going home, where she reported the incident.

Before the trial, the State filed a notice of intent to present evidence under Idaho Rule of Evidence 404(b). The State sought to introduce testimony relating Coleman's actions on two occasions a year earlier that allegedly demonstrated "grooming" behavior by Coleman toward the child. On one prior occasion, Coleman allegedly attempted to remove the child's pants while she was asleep and was alone with Coleman in his room (the pants incident). Coleman maintained at the time that he was helping the child put on her pajamas. On another occasion Coleman allegedly upset the child by pressing her to talk about her stepfather while the two were alone at a bonfire (the bonfire incident), a topic Coleman knew the child was uncomfortable talking about. Coleman filed a motion in limine to exclude the Rule 404(b) evidence from trial, and additionally requested that expert testimony the State planned to present regarding "grooming" behaviors be excluded.

The district court conducted a hearing on the motions and held that the State's expert would be allowed to testify about grooming generally, but reserved ruling on the Rule 404(b) evidence until the testimony was presented outside the presence of the jury. After hearing the child's testimony, the district court ruled that testimony regarding the pants incident would be allowed, and took the bonfire incident under advisement. The court never formally ruled on the bonfire incident, but during the child's testimony the district court stated: "I had indicated to both counsel this morning before testimony began that I would allow [the child] to testify about the incidents that were the subject of the motion in limine that I had not ruled on last evening." The evidence was presented at trial and the jury found Coleman guilty. The district court imposed a unified sentence of fifteen years, with seven years determinate. Coleman timely appealed.

## II.

## ANALYSIS

Coleman argues the Rule 404(b) evidence was irrelevant, and therefore improperly admitted. He also contends that the district court failed to weigh the probative value of the evidence against the risk of unfair prejudice and, in the alternative, that the probative value of the evidence does not substantially outweigh the risk of unfair prejudice. The State asserts that the Rule 404(b) evidence was relevant, that the district court balanced the probative value and risk of unfair prejudice, and did not abuse its discretion in admitting the evidence.

The evidence rule in question, Rule 404(b), provides:

> Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that the person acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident, provided that the prosecution in a criminal case shall file and serve notice reasonably in advance of trial, or during trial if the court excuses pretrial notice on good cause shown, of the general nature of any such evidence it intends to introduce at trial.

This rule prohibits introduction of evidence of acts other than the crime for which a defendant is charged if its probative value is "entirely dependent upon its tendency to demonstrate the defendant's propensity to engage in such behavior." *State v. Grist*, 147 Idaho 49, 54, 205 P.3d 1185, 1190 (2009). *See also State v. Avila*, 137 Idaho 410, 412, 49 P.3d 1260, 1262 (Ct. App. 2002). Of course, evidence of a prior crime, wrong, or act may implicate a person's character while also being relevant and admissible for some permissible purpose, such as those listed in the rule.

When determining the admissibility of evidence to which a Rule 404(b) objection has been made, the trial court must first determine whether there is sufficient evidence of the prior acts that a reasonable jury could believe the conduct actually occurred. If so, then the court must consider: (1) whether the prior acts are relevant to a material disputed issue concerning the crime charged, other than propensity; and (2) whether the probative value is substantially outweighed by the danger of unfair prejudice. *Grist*, 147 Idaho at 52, 205 P.3d at 1188; *State v. Parmer*, 147 Idaho 210, 214, 207 P.3d 186, 190 (Ct. App. 2009). On appeal, this Court defers to the trial court's determination that there is sufficient evidence of the prior act if it is supported by substantial and competent evidence in the record. *Parmer*, 147 Idaho at 214, 207 P.3d at 190. In

3

this case, Coleman does not challenge the existence of the prior acts as established facts. Therefore, we address only the relevancy and unfair prejudice issues. We exercise free review, however, of the trial court's relevancy determination. *State v. Sheldon*, 145 Idaho 225, 229, 178 P.3d 28, 32 (2008); *State v. Scovell*, 136 Idaho 587, 590, 38 P.3d 625, 628 (Ct. App. 2001). The trial court's balancing of the probative value of the evidence against the danger of unfair prejudice will not be disturbed unless we find an abuse of discretion. *State v. Norton*, 151 Idaho 176, 190, 254 P.3d 77, 91 (Ct. App. 2011).

## A.    Relevance

Coleman challenges the admission of both the pants incident and the bonfire incident as irrelevant to the charged crime. The State contends that evidence of both incidents was relevant because it demonstrated a pattern of grooming behavior, and this pattern was probative of Coleman's intent and plan to commit the charged offense. The State acknowledges that the incidents must be viewed together to be relevant as evidence of grooming.

This Court has previously addressed evidence described as "grooming." In *State v. Blackstead,* 126 Idaho 14, 878 P.2d 188 (Ct. App. 1994), evidence of three separate incidents was admitted. In the first incident, Blackstead gave drugs to the victim, engaged in intercourse with the victim, and then gave her money and drugs. Blackstead was charged with lewd and lascivious conduct with a minor under the age of sixteen for this event. *Id.* at 16, 878 P.2d at 190. In the second incident, occurring several days after the first, Blackstead gave drugs to the victim and her friend, asked the friend if she used birth control and then asked the victim if they could "slip away." *Id.* The victim refused and Blackstead was not charged with any crime relative to this event. Finally, Blackstead was also charged with lewd conduct and the infamous crime against nature stemming from another incident of sexual contact with the victim occurring approximately three to four weeks after the initial incident. *Id.* Blackstead was acquitted relative to the third event, and appealed from his conviction relative to the first incident. *Id.* Blackstead contended that evidence of drug use should have been excluded under Rule 404(b) because its only purpose was to show bad character and criminal propensity. *Id.* at 17, 878 P.2d at 191. The district court deemed the uncharged evidence of drug use relevant as part of the *res gestae* of the charged crimes, as well as to demonstrate Blackstead's process of "grooming" the victim for sexual exploitation. We noted that the State sought to show that Blackstead used drugs as a method of seducing or lowering the resistance of the victim and rewarding her for

4

sexual contact. While the evidence of drug use in the first incident was, indeed, part and parcel of the molestation, the evidence of drug use and sexual suggestion in the second incident preceded the third incident, although Blackstead was acquitted at trial of that charge. *Id.* at 19, 878 P.2d at 193. In recognition of the series of events, we concluded that, as to the third incident, evidence of the second incident and drug use was probative of Blackstead's continuing criminal design to cultivate a relationship with the victim, induce her submission to sexual demands and to procure her silence, acknowledging that the district court referred to this conduct as "grooming." *Id.* This Court went on to state, in regard to the second incident:

> Although the probative value of this evidence would have been more questionable if Blackstead had been tried for only the previously accomplished [first] offense of August 11, we are persuaded the evidence was relevant to the alleged subsequent molestation; this testimony indicated an on-going scheme by Blackstead to accomplish further sexual contacts with R.S. through use of drugs as a means of persuasion and inducement. Stated differently, the evidence showed Blackstead's steps allegedly effectuating a plan to accomplish one of the charged offenses.

*Id.* at 19-20, 878 P.2d at 193-94.

*Blackstead* also referenced the Idaho Supreme Court's decision in *State v. Alvord*, 47 Idaho 162, 272 P. 1010 (1928), and noted that "there, evidence was admitted showing that the defendant accused of rape had offered intoxicating liquor to a fourteen-year-old girl and her companions before he had intercourse with the girl." *Blackstead*, 126 Idaho at 19, 878 P.2d at 193. We further noted that the *Alvord* Court held that the evidence was relevant to show the defendant's design to bring about sexual intercourse, and concluded:

> Proof of a plan to commit the charged crime is a purpose authorized by I.R.E. 404(b) for introduction of other crimes evidence. Therefore, in cases where uncharged criminal acts of the defendant were in furtherance of an underlying plan to commit the charged crime, those acts are, as in *Alvord*, admissible to show the accomplishment of the criminal goal.

*Blackstead*, 126 Idaho at 19, 878 P.2d at 193. In *Blackstead*, we concluded that the evidence of drug usage was probative of "Blackstead's 'grooming' of [the victim] for his elicit purposes." *Id*. at 20, 878 P.2d at 194.

In *State v. Truman,* 150 Idaho 714, 249 P.3d 1169 (Ct. App. 2010), we affirmed a conviction for lewd conduct, holding that Truman's prior behavior toward his victim was admissible as evidence of steps in a plan to accomplish the charged offenses. *Id.* at 722, 249

P.3d at 1177. Truman was indicted based on an allegation of oral sexual contact between Truman and his fourteen-year-old stepdaughter. *Id*. at 716, 249 P.3d at 1171. At trial, the victim testified that Truman first made sexual comments toward her when she was twelve years old. *Id.* at 722, 249 P.3d at 1177. There was no sexual contact between Truman and the victim until approximately one year later, when Truman approached the victim and her friend and, at his request, the two performed oral sex on him. *Id.* at 718, 249 P.3d at 1174. The victim's testimony revealed that similar incidents, both with the victim and her friend and the victim alone, continued and became increasingly frequent over the course of a year. *Id.* Leading up to the charged conduct, these incidents happened three to four times per week. *Id.* Sometimes Truman would also have pornography playing on the television, and at times showed the victim pornography on the Internet. *Id.* During this period of abuse, the victim testified that Truman "would grant her favors such as giving her money, letting her drive the family vehicles, buying her items, allowing her extra time on the computer, or taking her to work when she acquiesced to his sexual demands, but would withhold privileges when she did not." *Id.* at 718-19, 249 P.3d at 1173-74.

This Court concluded that the evidence of Truman's conduct was admissible to show a plan to accomplish the charged offense:

> Here, based on *Blackstead*, we conclude that the evidence of Truman's behavior towards [the victim], including his first sexual comments towards her when she was twelve years old, showing her pornography, the use of rewards and punishments depending on whether she gave in to his sexual demands, as well as the sexual acts the two engaged in was admissible evidence establishing Truman's continuing criminal design to cultivate a relationship with [the victim] such that she would concede to his sexual demands, also known as "grooming."

*Id.* at 722, 249 P.3d at 1177.

In this case, the State asserts that the evidence was offered solely for the purpose of establishing that Coleman groomed the child for ultimate sexual contact. The issue, then, is whether the two prior incidents are evidence of steps effectuating a plan to accomplish the charged crime or a continuing criminal design to cultivate a relationship with the child such that she would concede to his sexual demands. The two incidents the State presented at trial do not tend to show that Coleman had a prior plan, design, or system which included the doing of the act charged as part of its consummation or, as stated in *Blackstead*, "steps allegedly effectuating

6

a plan to accomplish" the charged offense. Nor do the two incidents equate to a "continuing criminal design to cultivate a relationship with [the victim] such that she would concede to his sexual demands." *Truman,* 150 Idaho at 722, 249 P.3d 1177.

This case is distinguishable from both *Blackstead* and *Truman.* While referencing "grooming," *Blackstead*--as well as *Alvord*--does not rely on a systematic pattern of conduct designed to progress to a trusting relationship with the child, as alleged in this case. Instead, in *Blackstead* and *Alvord*, drugs and alcohol were employed as a direct "method of seducing or lowering the resistance of the victim and rewarding her for submission to his sexual demands." *Blackstead*, 126 Idaho at 19, 878 P.2d at 193. In *Truman*, Truman's grooming behavior involved a clear pattern of repeated criminal and sexual conduct: rewards and punishments based on compliance with Truman's sexual demands; sexualized comments and sexual acts occurring over the course of a year; and showing the victim pornography on multiple occasions. The challenged evidence in *Truman* involved a series of sexual encounters taking place for over a year leading up to the charged conduct. *See Truman,* 150 Idaho at 719, 249 P.3d at 1174.

In this context, "grooming" is conduct intended to foster trust and remove defenses over time through a pattern of seduction and preparation, resulting in the child being willing and compliant to the defendant's sexual abuse. Here, the State expressly acknowledges that neither the bonfire incident nor the pants incident involved any sexual contact. No sexualized comments or discussion was involved in either incident. While evidence of grooming without overt sexual content may be relevant, it still must tend to establish a pattern of behavior toward the ends presumed by use of the word "grooming." We cannot say that the two incidents involved in this case do so.

Each of the incidents in this case occurred only once; the incidents do not resemble each other; and Coleman's conduct on both occasions, however inappropriate, was not criminal. Furthermore, the incidents were separated from the charged conduct by more than a year, with no evidence of any intervening "grooming" conduct toward the child by Coleman. It is readily apparent that the incidents in this case do not create a pattern of grooming behavior similar to that in *Truman.* Nor do the incidents have a sufficient link in time and kind to be relevant to Coleman's intent or as "steps allegedly effectuating a plan to accomplish one of the charged offenses." *Blackstead,* 126 Idaho at 20, 878 P.2d at 194.

7

Even in the context of the State's expert's testimony, Coleman's conduct is not sufficiently probative of grooming to be relevant to Coleman's plan or intent. The expert testified that grooming might entail things that are in and of themselves fairly innocuous, such as treats, prizes, going to get an ice cream cone, or spending special time together, things designed to develop an endearing and trusting relationship. The two incidents here do not even arguably point to endearing or engendering trust in the child toward Coleman. The child here, although relatively young, is not a child with "disabilities, handicaps, speech problems," whom the expert testified may be particularly targeted. The expert further testified that grooming involves progression. While grooming is meant to progress to sexual contact, the expert testified that progression occurs in the grooming process itself. The evidence of the two incidents here does not suggest a grooming progression or "tend[] by reasonable inference to establish the commission of the crime charged." *Alvord*, 47 Idaho at 174, 272 P. at 1013.

The State's expert also testified that a part of the grooming process is, generally, increased physical contact with the victim, which may be a touch on the shoulder, a kiss on the lips, or something outside the normal realm of physical contact. This type of physical contact, meant to lower the child's resistance to or increase the child's compliance with contact progressing to sexual contact, is not present in the evidence at issue. According to the State's expert, talking about sexual content in an inappropriate situation or environment may be part of the grooming process. This sexualization is not suggested in the two incidents at issue. While the reaction of the child is not determinative of whether conduct is intended as grooming, the goal of grooming conduct is "to cultivate a relationship with [the child] such that she would concede to his sexual demands." *Truman,* 150 Idaho at 722, 249 P.3d 1177. The expert testified that:

> [C]hildren may feel like they have consented to contact with an individual because they've allowed previous behaviors that they were uncomfortable with. So if a child doesn't object to something that they're uncomfortable with, it becomes harder for them to object to something later on that is perhaps more uncomfortable.

In this case, the evidence shows that the child did not accept and expressly objected to the conduct involved in the two incidents. We are evaluating whether the evidence tends to suggest Coleman's plan or intent to commit the charged crime. From the point of view of an alleged groomer, the two incidents produced no "positive" results and, under the circumstances of this

8

case, there was no intervening conduct over the next year leading up to the charged event, which tends to cast doubt on or negate the assertion of grooming intent in the two incidents.

Finally, the State's expert testified that violations of a child's boundaries may be a significant part of grooming. The State asserts that the two incidents involved here represented violations of the child's normal boundaries with adults. However, a conscious plan to sexually abuse a child is only one of many reasons that a child's boundaries might be violated; and some of these can simply be attributed to ignorance or a general tendency to act inappropriately as opposed to something more sinister. In this case, the two incidents involve no sexualization, sexual contact, or crimes. While such conduct is not necessary to constitute grooming, other conduct, including possibly innocuous conduct in particular, must be closely scrutinized. As alleged in this case, grooming behavior is carried out with the ultimate goal of sexual contact with the child. It is a pattern of behavior intended to foster trust and remove defenses in order to prepare the child for sexual abuse. Thus, the defendant's conduct must tend toward the ultimate goal in order to establish a pattern of grooming.

Here, two unrelated incidents are asserted as part of an alleged, but amorphous pattern of "grooming" behavior or steps allegedly effectuating a plan to accomplish the charged offense. Care must be taken in order that prior acts evidence is not bundled into an official-sounding theory and coupled with expert testimony in order to increase its apparent value in demonstrating a "plan" or malevolent intent by the defendant. We do not, in any way, suggest that evidence of grooming is not relevant or that even apparently innocuous conduct cannot be relevant evidence of grooming. However, the two incidents under the circumstances of this case establish no pattern of behavior or indicate a plan or intent by Coleman to accomplish the crime charged. The district court erred in admitting the Rule 404(b) evidence.[1]

## B. Harmless Error

The State argues that even if the district court erred, the error was harmless. Error is not reversible unless it is prejudicial. *State v. Stoddard*, 105 Idaho 169, 171, 667 P.2d 272, 274 (Ct. App. 1983). With limited exceptions, even constitutional error is not necessarily prejudicial error. *Id.* Thus, we examine whether the alleged error complained of in the present case was

---

[1]    In the absence of a showing of relevance, we need not discuss the application of the Rule 403 balancing test. *See State v. Molen,* 148 Idaho 950, 956, 231 P.3d 1047, 1053 (Ct. App. 2010).

harmless. *See State v. Lopez*, 141 Idaho 575, 578, 114 P.3d 133, 136 (Ct. App. 2005). To hold an error harmless, this Court must conclude, beyond a reasonable doubt, that the jury's finding of guilt "would surely not have been different absent the constitutional error." *Sullivan v. Louisiana*, 508 U.S. 275, 280 (1993).

The State's case rested almost entirely on the child's testimony. Furthermore, the heart of Coleman's defense, and the only real issue in the case, was the intent behind his actions. Without the Rule 404(b) evidence, the only evidence of Coleman's intent was the child's testimony regarding Coleman's actions on a single occasion. As we noted above, evidence of prior misconduct in sexual abuse cases is especially prejudicial. *See Johnson*, 148 Idaho at 670, 227 P.3d at 924. The State argues that any prejudice was removed by the limiting instruction given to the jury. But in such cases, even with limiting instructions, there exists a high risk that a jury could convict on the deviant character of the defendant. *See id.*; *State v. Pokorney*, 149 Idaho 459, 466, 235 P.3d 409, 416 (Ct. App. 2010) (finding in a lewd conduct case that, despite the district court's limiting instruction, "there was a high risk that the jury would convict Pokorney based upon propensity and sexual deviancy"). The child's testimony at trial was sufficient to support a guilty verdict. However, given the emphasis on the other acts evidence, and particularly coupled with the expert testimony, we cannot say that it is beyond a reasonable doubt that the jury's finding would not have been different absent the error. Therefore, the district court's error was not harmless.

### III.
### CONCLUSION

The district court erred in admitting the Rule 404(b) evidence. We cannot say that the error was harmless and, accordingly, we vacate the judgment of conviction and remand for further proceedings.

Judge GUTIERREZ and Judge MELANSON **CONCUR.**