**IN THE COURT OF APPEALS OF THE STATE OF IDAHO**

**Docket No. 36194**

| | |
|---|---|
| STATE OF IDAHO, | ) |
| | ) **2010 Opinion No. 86** |
| Plaintiff-Respondent, | ) |
| | ) **Filed: December 16, 2010** |
| v. | ) |
| | ) **Stephen W. Kenyon, Clerk** |
| JEFFREY ALAN TRUMAN, | ) |
| | ) |
| Defendant-Appellant. | ) |
| | ) |

Appeal from the District Court of the Third Judicial District, State of Idaho, Canyon County. Hon. Gregory M. Culet, District Judge.

Judgment of conviction for lewd conduct with a minor, <u>affirmed</u>; judgment of conviction for sexual abuse of a minor, <u>vacated</u>.

Molly J. Huskey, State Appellate Public Defender; Sarah E. Tompkins, Deputy Appellate Public Defender, Boise, for appellant. Ian H. Thomson argued.

Hon. Lawrence G. Wasden, Attorney General; Elizabeth A. Koeckeritz, Deputy Attorney General, Boise, for respondent. Elizabeth A. Koeckeritz argued.

_____

GUTIERREZ, Judge

Jeffrey Alan Truman appeals from his convictions, following a jury trial, for lewd conduct with a minor under sixteen and sexual abuse of a minor. For the reasons set forth below, we affirm the judgment of conviction for lewd conduct with a minor, and vacate the conviction for sexual abuse of a minor.

**I.**

**FACTS AND PROCEDURE**

Truman was indicted for lewd conduct with a minor under sixteen years old, Idaho Code § 18-1508, based on an allegation of oral sexual contact between Truman and his fourteen-year-old stepdaughter, T.S., and sexual abuse of a minor, I.C. § 18-1506(a), based on the allegation that Truman solicited T.S. to participate in a sexual act by asking her to film a sexual act between Truman and J.R., a young woman who was a family friend. The state alleged that the conduct

1

giving rise to the sexual abuse charge occurred at some point between August 2006 and December 2006, and the conduct giving rise to the lewd conduct charge occurred on December 5, 2007.

Prior to trial, the state filed a motion in limine seeking to admit evidence of prior bad acts under Idaho Rule of Evidence 404(b), specifically evidence of prior uncharged sexual contacts between Truman and T.S. and between Truman and J.R. that were witnessed by T.S. Truman filed a motion in limine seeking to limit the testimony and evidence at trial to the allegations actually set forth in the indictment and further sought an order precluding the state from eliciting testimony regarding the alleged diminished mental capacity of J.R. At a hearing on the motions, the district court allowed admission of the prior bad acts evidence proffered by the state and also found that evidence of the mental capacity of J.R. was irrelevant and thus not admissible.

At trial, T.S. testified as to the acts giving rise to the charges, as well as the prior sexual acts the court had admitted under I.R.E. 404(b), and J.R. testified as to sexual acts between her and Truman, some of which had also involved T.S. The jury found Truman guilty as charged, and he was sentenced to thirty years imprisonment with twenty years determinate on the lewd conduct charge and fifteen years imprisonment with ten years determinate on the sexual abuse of a minor charge, with the sentences to run concurrently. Truman now appeals.

## II.

## ANALYSIS

### A.    Sexual Abuse of a Minor

Truman contends that his conviction for sexual abuse of a minor should be vacated because there was insufficient evidence to support the conviction and because the facts alleged in the indictment failed to support the charge of sexual abuse of a minor under the version of the sexual abuse statute in effect at the time. The state concedes that the facts alleged in the indictment--as well as the facts proved at trial--were insufficient to sustain the sexual abuse conviction because they only alleged that Truman requested that T.S. videotape him and J.R. engaging in a sexual act while the statute at the time required proof that the defendant requested

2

that the minor victim participate directly in the sexual contact.[1]  Accordingly, we vacate Truman's conviction for sexual abuse of a minor.

## B.    Prior Bad Acts Evidence[2]

Truman contends the district court erred in admitting evidence of uncharged sexual activity between himself and T.S. and between himself and J.R., because the court's decision to admit the evidence was based on "an erroneous understanding that there were relaxed standards of admissibility for this evidence in cases where the defendant is charged with a sexual offense against a minor."  Additionally, in regard to evidence of sexual activity between Truman and J.R., Truman also asserts that the evidence was erroneously admitted because it was found to be relevant only to the charge of sexual abuse of a minor, which the state now concedes to be invalid, and because under I.R.E. 403, the prejudice of the evidence outweighed any probative value.[3]

Evidence of other crimes, wrongs, or acts is not admissible to prove a defendant's criminal propensity.  I.R.E. 404(b); *State v. Needs*, 99 Idaho 883, 892, 591 P.2d 130, 139 (1979); *State v. Winkler*, 112 Idaho 917, 919, 736 P.2d 1371, 1373 (Ct. App. 1987).  However, such evidence may be admissible for a purpose other than that prohibited by I.R.E. 404(b).  *State v. Avila*, 137 Idaho 410, 412, 49 P.3d 1260, 1262 (Ct. App. 2002).  In determining the admissibility of evidence of prior bad acts, the Supreme Court has utilized a two-tiered analysis.  The first tier involves a two-part inquiry:  (1) whether there is sufficient evidence to establish the prior bad acts as fact; and (2) whether the prior bad acts are relevant to a material disputed issue

---

[1]     Idaho Code § 18-1506 has since been amended, now providing that it constitutes sexual abuse of a child to "induce, cause or permit a minor child to witness an act of sexual conduct."

[2]     The state argues that this Court cannot address this issue on appeal because it was not preserved or, in the alternative, it constituted invited error.  Because we conclude there was no error in admitting the evidence, we need not address these arguments.

[3]     While Truman does not differentiate between evidence of sexual acts with J.R. during the incident where Truman asked T.S. to videotape them and sexual acts with J.R. on other dates when T.S. was present, we note that the testimony regarding the videotaping incident was not "other acts" evidence--rather, it was direct evidence of the sexual abuse charge.  Truman cites no authority for his implicit assertion that our vacation of the sexual abuse charge on appeal "transforms" the evidence into other acts evidence.  We, therefore, address only the testimony concerning sexual acts on dates other than the videotape incident under Rule 404(b).

concerning the crime charged, other than propensity. *State v. Grist*, 147 Idaho 49, 52, 205 P.3d 1185, 1188 (2009). We will treat the trial court's factual determination that a prior bad act has been established by sufficient evidence as we do all factual findings by a trial court. We defer to a trial court's factual findings if supported by substantial and competent evidence in the record. *State v. Porter*, 130 Idaho 772, 789, 948 P.2d 127, 144 (1997). In this case, Truman does not challenge the existence of the prior bad act as an established fact. Therefore, we address only the second part of the first tier--the relevancy determination. Whether evidence is relevant is an issue of law. *State v. Atkinson*, 124 Idaho 816, 819, 864 P.2d 654, 657 (Ct. App. 1993). Therefore, when considering admission of evidence of prior bad acts, we exercise free review of the trial court's relevancy determination. *Id.*

The second tier in the analysis is the determination of whether the probative value of the evidence is substantially outweighed by unfair prejudice. *Grist*, 147 Idaho at 52, 205 P.3d at 1188. When reviewing this tier we use an abuse of discretion standard. *Id.* When a trial court's discretionary decision is reviewed on appeal, the appellate court conducts a multi-tiered inquiry to determine: (1) whether the lower court correctly perceived the issue as one of discretion; (2) whether the lower court acted within the boundaries of such discretion and consistently with any legal standards applicable to the specific choices before it; and (3) whether the lower court reached its decision by an exercise of reason. *State v. Hedger*, 115 Idaho 598, 600, 768 P.2d 1331, 1333 (1989).

> In deciding to admit the evidence, the district court stated:

> [W]e have a sort of separate line of cases and authority not just from the Idaho Supreme Court and Court of Appeals, but all over the United States, including in federal court over the standards that apply to 404(b) standards in sex offense cases of children.
> . . . .
> . . . I think the notice by the state is sufficient for the state to generally present evidence from the victim and/or corroboration from other sources of this event that occurred when she was approximately 11 and the events that occurred later. . . .
> . . . that helps to establish in addition to corroborating the victim, motive, opportunity, intent, preparation, in terms of preparing the victim, and other aspects of 404(b), as well as corroborate the victim's testimony. So I'm going to allow that.

At trial, T.S. testified that Truman had initially approached her when she was twelve years old. She explained that he came into her bedroom and told her that if she was ever

4

"curious" about anything, ever wanted to "try anything," know what any body parts were, or how to do something, that he was "there for [T.S.] to experiment with." He also told her that he had been having oral sex with J.R. and that T.S. could do the same with him as well. T.S. further testified that later that night, Truman told her not to tell anyone about their conversation because she would look "stupid" and that no one would believe her.

T.S. testified that no sexual contact occurred between them until approximately a year later (in 2006), when Truman requested that T.S. videotape him having oral sex with J.R. T.S. refused, but watched as J.R. and Truman performed oral sex on each other. T.S. then stated that later that evening, Truman approached her and J.R. in T.S.'s bedroom and that at his request J.R. and T.S. performed oral sex on Truman.

T.S. also testified that similar incidents--both with J.R. and with T.S. alone--continued to occur, occasionally in the beginning but became increasingly frequent over time until it was happening three to four times a week. She also noted that during some incidents Truman would have pornography playing on the television in the background and that Truman had showed her pornography on the Internet.

T.S. also testified that Truman would grant her favors such as giving her money, letting her drive the family vehicles, buying her items, allowing her extra time on the computer, or taking her to work when she acquiesced to his sexual demands, but would withhold privileges when she did not. She testified that one incident had involved genital to genital contact between the two.

In relevant part, J.R. testified that she had seen Truman's genitals while in the presence of T.S., that Truman had been watching pornography at the time, and that she had performed oral sex on Truman while T.S. was present and that T.S. had done the same while J.R. was present.

### 1. Sexual acts with T.S.

Truman asserts that the district court admitted T.S.'s testimony as to the sexual acts that she and Truman had engaged in for approximately a year before the charged lewd conduct incident "predicated on an erroneous understanding of the law regarding I.R.E. 404(b) evidence standards in child sex cases. . . ." Specifically, Truman points to the court's statement in admitting the evidence that there existed a "separate line of cases and authority" governing the admissibility of prior bad acts evidence in "child victimization cases"--contending that this finding is in conflict with the Idaho Supreme Court's recent holding in *Grist* that the admission

5

of I.R.E. 404(b) evidence in child sex cases is subject to the same analysis as the admission of such evidence in any other case. *Grist*, 147 Idaho at 51-52, 205 P.3d at 1187-88.

The district court's statement that there essentially existed a special standard for admission of Rule 404(b) evidence in child sex abuse cases was understandable given that *Grist* had not yet been issued at the time the court made the evidentiary ruling. This is not automatically reversible error, however, because where a ruling is correct, though based upon an incorrect reason, it still may be sustained upon the proper legal theory. *State v. Pierce*, 107 Idaho 96, 102, 685 P.2d 837, 843 (Ct. App. 1984). Thus, we examine whether, in light of *Grist* and its progeny, the evidence complained of would be admissible under I.R.E. 404(b).

In *Grist*, our Supreme Court acknowledged that Idaho courts have sometimes interpreted Idaho law as permitting the admission of character evidence to prove child-sex-abuse charges, however, as we noted above, the Court went on to expressly repudiate the notion that a different standard applies to admission of Rule 404(b) evidence in such cases. *Grist*, 147 Idaho at 51, 205 P.3d at 1187. The Court then reiterated that bad acts may be admitted if relevant to prove a common scheme or plan embracing the commission of two or more crimes *so related* to each other that proof of one tends to establish the other, knowledge, identity, or absence of mistake or accident. *Id*. at 54-55, 205 P.3d at 1190-91.

In *State v. Johnson*, 148 Idaho 664, 227 P.3d 918 (2010), our Supreme Court had occasion to apply the standards it established in *Grist* regarding admission of other bad acts evidence to prove a common scheme or plan. There, the Court summarized the rule established in *Grist*:

> [A]t a minimum, there must be evidence of a common scheme or plan beyond the bare fact that sexual misconduct has occurred with children in the past. The events must be linked by common characteristics that go beyond merely showing a criminal propensity and instead must objectively tend to establish that the same person committed all the acts. *See*, *e.g.*, *State v. Cardell*, 132 Idaho 217, 220, 970 P.2d 10, 13 (1998) (admitting evidence that defendant, a masseuse, had previously assaulted his clients while massaging them to show that he did not accidentally grope the victim during a massage); *State v. Tapia*, 127 Idaho 249, 254-55, 899 P.2d 959, 964-65 (1995) (admitting evidence the defendant had repeatedly expressed sexual interest in the juvenile victim to show a particular criminal intent to sexually assault her); *State v. Martin*, 118 Idaho 334, 338, 796 P.2d 1007, 1011 (1990) (admitting evidence of defendant's prior sexual assaults to show identity because in all the incidents the intruder wore a mask, held a young woman's kitchen knife to her throat, committed a forcible sex offense, and then discarded the knife while fleeing without taking anything else).

*Johnson*, 148 Idaho at 668, 227 P.3d at 922.

In a footnote, the *Johnson* Court also noted that commentators have identified three theories of how courts could require previous bad acts to be linked to the charged conduct in order to establish a common plan under Rule 404(b):

> First, the most permissive theory is that the previous acts must simply share some physical and temporal characteristics tending to show a common methodology, whether consciously chosen or not. Second, the court might require acts to share a common methodology and that there must be evidence the perpetrator consciously chose those common techniques. Third, and most restrictive, the court could require the prior acts to actually be linked to the charged conduct as part of an intentionally conceived grand design to achieve a specific criminal objective. Edward J. Imwinkelried, *Using a Contextual Construction to Resolve the Dispute over the Meaning of the Term "Plan" in Federal Rule of Evidence 404(b)*, 43 U. Kan. L. Rev. 1005, 1011-16 (1995).

*Id*. at 668 n.3, 227 P.3d at 922 n.3. The Court then stated that it had yet to choose between the approaches, but that it need not decide the issue in *Johnson*, because of its eventual conclusion that the similarities between the prior acts and the charged conduct in Johnson were too attenuated to establish relevance under any reading of Rule 404(b). *Id*. Applying *Grist*, the court concluded that where Johnson was charged with molesting his six to seven-year-old daughter, prior bad acts evidence that he had molested his younger sister when she was approximately eight years old and he was between fifteen and sixteen, was irrelevant to the charged conduct under I.R.E. 404(b). *Johnson*, 148 Idaho at 669, 227 P.3d at 923. Specifically, the Court reasoned:

> The court identified the following characteristics that linked the current charged conduct to the prior bad acts to which [Johnson's sister] testified: (1) both victims were about seven to eight years old; (2) both victims viewed Johnson as an "authority figure" because he was an older brother or father; (3) both courses of conduct involved Johnson requesting the victim to touch his penis. These similarities, however, are sadly far too unremarkable to demonstrate a "common scheme or plan" in Johnson's behavior. The facts that the two victims in this case are juvenile females and that Johnson is a family member are precisely what make these incidents unfortunately quite ordinary. The prior acts are irrelevant and therefore inadmissible.

*Id*.

As to the case at hand, we find our decision in *State v. Blackstead*, 126 Idaho 14, 878 P.2d 188 (1994), to be instructive and to have continued applicability even in light of our

7

Supreme Court's Rule 404(b) clarifications in *Grist* and *Johnson*. In that case, Blackstead was convicted of lewd and lascivious conduct with a minor under sixteen years of age after engaging in sexual activity with the fifteen-year-old daughter of a family friend. According to the victim, Blackstead had hired her to assist him with painting his hallway. While she was at his house, he offered her marijuana, which she accepted and smoked. She then observed Blackstead in the bathroom, nude and snorting something. When he returned, he offered the victim some "peanut butter crank," which she then used. While she was under the influence of these substances, Blackstead had sexual intercourse with her. He then drove her home and gave her forty dollars and a bag of marijuana.

The victim also testified at trial that several days after this first sexual encounter, Blackstead arrived at her home and provided her and a friend drugs, including crank, which he and the girls used. He then asked the victim if she could "slip away for awhile." She declined and Blackstead eventually left. He was not charged with any crime in connection with this incident.

Blackstead was also charged with lewd conduct and infamous crime against nature stemming from another incident of sexual contact between him and the victim, occurring approximately three to four weeks after the initial molestation. The jury, however, returned verdicts of not guilty on the charges stemming from this last occurrence.

On appeal, Blackstead argued, among other things, that the district court erred in allowing testimony that Blackstead used drugs and provided drugs to R.S., contending that it constituted evidence of uncharged misconduct admitted for the purpose of impugning his character in contravention of I.R.E. 404(b). Our decision affirming the admission of testimony concerning the second incident where Blackstead gave R.S. drugs is relevant to the question we face here. While we disagreed with the district court that the details of that incident were part of the *res gestae* of the charged conduct, because they bore no immediate temporal connection to either of the charged acts of lewd conduct and were not necessary to give the jury a complete story of the commission of the crimes, we then examined its admissibility as relevant to Blackstead's process of grooming the victim for sexual exploitation. We stated:

> This presents an independent rationale for relevance which we must examine. From the record it is apparent that the state sought to show that Blackstead used drugs as a method of seducing or lowering the resistance of the victim and rewarding her for submission to his sexual demands. It must be remembered that

although Blackstead was convicted for only the first alleged offense . . . the state had charged and at trial presented evidence of a second molestation several weeks later. The occasion when Blackstead allegedly gave drugs to [the victim and her friend] and asked [the victim] to "slip away" preceded the second charged sexual offense. We conclude that evidence of this intervening meeting and drug use with [the victim and her friend] was probative of a *continuing criminal design* by Blackstead to cultivate a relationship with [the victim], induce her submission to his sexual demands and procure her silence through use of drugs--a process which the district court referred to as "grooming."

*Blackstead*, 126 Idaho at 19, 878 P.2d at 193 (emphasis added).

We then examined whether such evidence was admissible under Rule 404(b), stating that:

> More than sixty years ago, a similar evidentiary issue was presented to the Idaho Supreme Court in *State v. Alvord*, 47 Idaho 162, 272 P. 1010 (1928). There, evidence was admitted showing that the defendant accused of rape had offered intoxicating liquor to a fourteen-year-old girl and her companions before he had intercourse with the girl. The Court held the testimony of the offer of liquor was relevant as evidence of the defendant's design to bring about sexual intercourse. The Court explained:
>
>> Evidence of a plan or design or scheme put into execution is relevant, if it tends by reasonable inference to establish the commission of the crime charged . . . . Speaking of this kind of evidence, Wigmore (section 304) says:
>>
>>> ". . . The result is to show (by probability) a precedent design which in its turn is to evidence (by probability) the doing of the act designed."
>
> *Id*. at 174, 272 P. at 1013 *quoting* 1 John H. Wigmore, EVIDENCE § 304 (2 ed. 1923). Although *Alvord* was decided long before adoption of the Idaho Rules of Evidence, the Court's reasoning remains persuasive and applicable to the case before us. Proof of a plan to commit the charged crime is a purpose authorized by I.R.E. 404(b) for introduction of other crimes evidence. Therefore, in cases where uncharged criminal acts of the defendant were in furtherance of an underlying plan to commit the charged crime, those acts are, as in *Alvord*, admissible to show the accomplishment of the criminal goal.
>
> Although the probative value of this evidence would have been more questionable if Blackstead had been tried for only the previously accomplished offense . . . we are persuaded the evidence was relevant to the alleged subsequent molestation; this testimony indicated an on-going scheme by Blackstead to accomplish further sexual contacts with [the victim] through use of drugs as a means of persuasion and inducement. Stated differently, the evidence showed Blackstead's steps allegedly effectuating a plan to accomplish one of the charged offenses.
>
> Accordingly, the district court properly deemed the episode of drug usage at [the victim's] home to be probative of Blackstead's "grooming" of [the victim]

9

for his elicit purposes.  This was a permissible use of the evidence for an objective other than demonstrating Blackstead's character or propensity. . . .

*Id*. at 19-20, 878 P.2d at 193-94.  *See also State v. Tapia*, 127 Idaho 249, 255, 899 P.2d 959, 965 (1995) (concluding that evidence of defendant's statements regarding his "interest" in minor victim "whether viewed as evidence of uncharged misconduct or not, were highly probative" because "[t]hey were evidence of Tapia's scheme or plan to subject a particular eleven year old girl to sexual acts" and "[t]hey showed the preparations undertaken by Tapia to put his plan into action and his intent to gratify his sexual desire for this adolescent girl").[4]

We first note our conclusion that the analysis of *Blackstead* survives the clarification of this area of the law made by our Supreme Court in *Grist* and *Johnson*.  What the *Grist* Court found to be problematic was the "exception" that had essentially been carved out of Rule 404(b) for child sex abuse cases--thus allowing other acts evidence to be admitted if the barest of similarities were present.  *Blackstead*, however, did not rely on this "exception," but rather presented a reasoned analysis of the use of prior acts evidence for the purpose of showing a continuing criminal design ("grooming") as to the *same* victim, which the Court concluded was a permissible use of evidence for an objective other than demonstrating a defendant's character or propensity.

Here, based on *Blackstead*, we conclude that the evidence of Truman's behavior towards T.S., including his first sexual comments towards her when she was twelve years old, showing her pornography, the use of rewards and punishments depending on whether she gave in to his sexual demands, as well as the sexual acts the two engaged in was admissible evidence establishing Truman's continuing criminal design to cultivate a relationship with T.S. such that she would concede to his sexual demands, also known as "grooming."  As we stated in *Blackstead*, such actions are evidence of steps allegedly effectuating a plan to accomplish the charged offenses.  The necessity of such evidence is clear--if the jury in this case had simply heard the bare facts of the sexual encounter charged as lewd conduct, questions as to T.S.'s willingness to go along with the act, the feasibility of T.S. and Truman being able to engage in such contact with her younger brother in the house, and other unanswered questions would have

---

[4]     *Tapia* was cited favorably by the Supreme Court in *State v. Johnson*, 148 Idaho 664, 668, 227 P.3d 918, 922 (2010).

arisen. On this basis, we conclude that the district court did not err in allowing testimony as to Truman's previous sexual contacts with T.S. because it was relevant for a purpose other than that proscribed by I.R.E. 404(b).[5]

## 2. Sexual acts with J.R.

Truman also argues that the district court erred in allowing testimony from T.S. and J.R. as to sexual contacts that Truman had with J.R., because the evidence was only relevant to an invalid charge (sexual abuse of a minor) and the potential for unfair prejudice of these acts was substantially outweighed by any probative value.

In ruling on the issue, the district court concluded that testimony regarding sexual acts between Truman and J.R. *when T.S. was present* was admissible. On appeal, Truman contends the district court found the evidence relevant only as to the sexual abuse charge; however the transcript belies this claim. The court specifically noted that Truman's participation in sexual activity with J.R., knowing that T.S. was present, was relevant as to "count one"--which was the lewd conduct charge--largely on the basis that it corroborated T.S.'s testimony. Thus, we need not address Truman's argument that it was reversible error for the district court to admit the evidence where the evidence was only relevant to the sexual abuse of a minor charge. As we conclude below, the evidence was probative as to permissible purposes under I.R.E. 404(b) with respect to the lewd conduct charge.

Again, we recognize that the district court referenced case law holding that I.R.E. 404(b) is applied differently in child sex abuse cases, which is no longer good law. However, we conclude that nonetheless, the evidence was relevant for a permissible purpose--on the same grounds as the evidence of Truman's contacts with T.S. that we analyzed above. The district court was careful to specify that only sexual contacts between J.R. and Truman that occurred in T.S.'s presence were admissible. Testimony that T.S. witnessed his sexual activity with J.R., that he asked T.S. to film this sexual activity, and that the first sexual encounter between T.S. and Truman occurred when J.R. was present and consisted of T.S. and J.R. alternately performing oral sex on Truman was all relevant to the grooming process which we describe above and therefore to the lewd conduct charge and not just the sexual abuse charge.

---

[5]    Truman does not argue that even if relevant for allowable purpose, the prejudice of this evidence significantly outweighed its probative value. Thus, we will not address this issue.

Truman contends that evidence of Truman's sexual contacts with J.R. should not have been admitted because the potential for unfair prejudice substantially outweighed their probative value. At oral argument, Truman presented the argument that because the district court's exercise of discretion on this matter was tainted by inclusion of the "invalid" sex abuse charge and the application of erroneous legal standards, we must remand to the district court for a new trial, which would include a new determination of whether the evidence should be excluded under I.R.E. 403 where Truman was charged only with lewd conduct.

Ordinarily, when a discretionary ruling has been tainted by a legal or factual error, we vacate the decision and remand the matter for a new, error-free discretionary determination by the trial court. *State v. Medrain*, 143 Idaho 329, 333, 144 P.3d 34, 38 (Ct. App. 2006); *State v. Upton*, 127 Idaho 274, 276, 899 P.2d 984, 986 (Ct. App. 1995). However, a remand may be avoided where it is apparent from the record that the result would not change or that a different result would represent an abuse of discretion. *Id.*

Here, it is evident from the record that even without the sex abuse charge, the district court would still have admitted the contested evidence and thus a remand is not required. As we noted above, the court specifically indicated that Truman's participation in sexual activity with J.R., knowing that T.S. was present, was relevant as to "count one," which was the lewd conduct charge, largely on the basis that it corroborated T.S.'s testimony. Thus, it is evident that the district court recognized the probative value of the evidence apart from the sex abuse charge. In addition, it is clear from the record that the district court would not have concluded that the evidence was unfairly prejudicial to the extent that it overcame its probative value. Again, as we noted above, the court had already determined that the evidence was admissible under I.R.E. 404(b) with regard to, in part, the lewd conduct charge. Thus, the court implicitly made a finding that the evidence was not impermissibly prejudicial in relation to the lewd conduct charge.

C.    **Prosecutorial Misconduct**

Truman contends that reversible error occurred when the prosecutor committed misconduct by eliciting testimony regarding J.R.'s mental competency despite the district court's pretrial order indicating that this evidence was irrelevant and not admissible. Truman also contends that because the prosecutor "deliberately" elicited this "prejudicial" information in contravention of the court's order, such misconduct rose to the level of fundamental error.

12

Prior to trial, Truman filed a motion in limine requesting that the state be prevented from eliciting testimony at trial regarding J.R.'s mental capacity and/or mental condition. After several discussions of the issue at several hearings, the district court ruled that "the state is not going to be allowed to attempt to establish the developmental disability of [J.R.] in the testimony of this case." The court further stated that if the state were to determine that such information was "inescapable, based on the testimony, [the state] should do an offer outside the presence of the jury" and the judge would then balance the potential prejudice of the evidence against the danger of unfair prejudice under I.R.E. 403. In a written order, the court reiterated that

> [a]s to the mental capacity of [J.R.], her mental status is not a relevant factor to the charges in this case as Defendant is not charged with any crime at this time for the sexual contact with [J.R.]. [J.R.]'s testimony is subject to her competency to testify as a witness not upon her mental status as it may relate to other possible charges.

On appeal, Truman contends that the state elicited testimony in contravention of this order when questioning Elizabeth LaFranier, J.R.'s guardian. Specifically, Truman takes issue with the following exchange between LaFranier and the prosecutor:

[Prosecutor]: Liz, what do you do for a living?
[LaFranier]: I work at the Nampa School District with Special Ed students.
. . . .
Q. Do you know somebody by the name of [J.R.]?
A. Yes, I do.
Q. How long have you known [J.R.]?
A. [J.R.] was in my classroom for two years, and she's lived with us for seven, so nine years.
Q. Okay. How old is [J.R.]?
A. 26.
Q. And what is your legal--you said she lives with you. Do you have any legal relationship?
A. She used to live in the state school, Idaho State School and Hospital, and we have a PCS home, and she resides with us.
. . . .
Q. During [the time you were going to school] did [J.R.] stay at home alone?
A. No, she can't be left alone.
Q. So what arrangements did you make for [J.R.]?
A. [Truman and his wife] said that they would watch [J.R.] while I went to school. So I got off work, then I would go to school. And she would be there for about an hour or two hours, and then my husband would pick her up when he got off work.

It is undisputed that Truman did not object to introduction of this testimony at trial. In fact, on cross-examination, defense counsel himself elicited similar testimony that LaFranier had met J.R. when J.R. was enrolled at a "day treatment program" that was "a dual diagnosis program for kids with special needs." Generally, Idaho's appellate courts will not consider error not preserved for appeal through an objection at trial. *State v. Johnson*, 126 Idaho 892, 896, 894 P.2d 125, 129 (1995). However, even in cases where an error has not been properly preserved, an appellate court may remedy that error where the error is so fundamental that it results in the defendant being deprived of his Fourteenth Amendment due process right to a fair trial in a fair tribunal. *State v. Perry*, ___ Idaho ___, ___ P.3d ___ (Dec. 7, 2010). Recently in *Perry*, the Idaho Supreme Court clarified the analysis applicable to unobjected-to fundamental error, stating that:

> where an error has occurred at trial and was not followed by a contemporaneous objection, such error shall only be reviewed where the defendant demonstrates to an appellate court that one of his unwaived constitutional rights was plainly violated. If the defendant meets this burden then an appellate court shall review the error under the harmless error test, with the defendant bearing the burden of proving there is a reasonable possibility that the error affected the outcome of the trial.

*Id*. at ___, ___ P.3d at ___.

Here, even assuming, without deciding, that the prosecutor's elicitation of the testimony at issue was error, the defendant has not shown that there was a reasonable possibility that the alleged error affected the outcome of the trial. The fact that J.R., who testified that she was twenty-six years old, had a mental disability was readily observable to the jury at the time she testified given that both the prosecutor and defense attorney had to question her as if she was a child. In addition, the fact that her guardian (referred to as her "mother"), LaFranier, even testified was a further indication of this fact. Had J.R. been a typical twenty-six-year-old woman, LaFranier's other testimony, to which no claim of error has been made, would not have made sense. Thus, it would have been apparent to the jury that J.R. did not possess the typical maturity and/or mental capacity of a twenty-six-year-old woman regardless of the portions of LaFranier's testimony which Truman challenges on appeal.

We therefore conclude that Truman cannot show a reasonable possibility that relatively oblique references to J.R.'s mental capacity (which the state did not emphasize, but presented only to explain why J.R. had been present at Truman's home) affected the outcome of the trial.

14

**D.    Cumulative Error**

Truman also argues that should this Court find that none of the errors at trial individually rose to the level requiring reversal of Truman's convictions, the irregularities aggregated to deprive him of a fair trial, thus requiring application of the cumulative error doctrine.   Under the cumulative error doctrine, an accumulation of irregularities, each of which might be harmless in itself, may in the aggregate reveal the absence of a fair trial in contravention of the defendant's right to due process.  *State v. Severson*, 147 Idaho 694, 723, 215 P.3d 414, 443 (2009). The presence of errors alone, however, does not require the reversal of a conviction.  *State v. Moore*, 131 Idaho 814, 823, 965 P.2d 174, 183 (1998). The cumulative effect of the errors we have assumed--specifically in the district court's application of I.R.E. 403 to evidence of Truman's prior uncharged sexual contact with J.R. and the prosecutor's elicitation of testimony regarding J.R.'s mental capacity--when viewed in relation to the totality of the evidence presented at trial, did not deprive Truman of a fair trial.

## III.
## CONCLUSION

Because the acts alleged in the indictment and proved at trial were insufficient to sustain a sexual abuse conviction under the statute in effect at the time, we vacate Truman's conviction for sexual abuse.  We conclude that the district court did not commit reversible error in admitting evidence of prior uncharged sexual contact between T.S. and Truman because it was relevant for a permissible purpose under I.R.E. 404(b).   Additionally, the district court did not err in admitting evidence of prior uncharged sexual contact between J.R. and Truman while T.S. was present, because it, too, was relevant to the lewd conduct charge and it is evident from the record that had it applied the appropriate legal standards, the district court would not have excluded the evidence under I.R.E. 403.   We also conclude that even assuming the prosecutor committed misconduct in eliciting testimony regarding J.R.'s mental capacity, it was harmless error. Finally, even assuming that several errors occurred, they do not amount to cumulative error such that reversal is required.   Accordingly, we vacate Truman's conviction for sexual abuse, but affirm his conviction for lewd conduct.

Chief Judge LANSING and Judge MELANSON, **CONCUR.**