## IN THE COURT OF APPEALS OF THE STATE OF IDAHO

### Docket No. 39287

| | | |
|---|---|---|
| STATE OF IDAHO, | ) | 2013 Opinion No. 61 |
| | ) | |
| Plaintiff-Respondent, | ) | Filed: November 14, 2013 |
| | ) | |
| v. | ) | Stephen W. Kenyon, Clerk |
| | ) | |
| FRANKLIN WARD OSTERHOUDT, | ) | |
| | ) | |
| Defendant-Appellant. | ) | |
| | ) | |

Appeal from the District Court of the Fifth Judicial District, State of Idaho, Twin Falls County. Hon. G. Richard Bevan, District Judge.

Judgment of conviction for rape, incest, and lewd conduct, <u>affirmed</u>.

Sara B. Thomas, State Appellate Public Defender; Jason C. Pintler, Deputy Appellate Public Defender, Boise, for appellant. Jason Curtis Pintler argued.

Hon. Lawrence G. Wasden, Attorney General; Daphne J. Huang, Deputy Attorney General, Boise, for respondent. Daphne J. Huang argued.

---

PERRY, Judge Pro Tem

Franklin Ward Osterhoudt appeals from the judgment of conviction entered upon the jury verdict finding him guilty of rape, Idaho Code §§ 18-6101, 18-6104; incest, I.C. §§ 18-6602, 18-112; and two counts of lewd conduct with a minor under sixteen, I.C. § 18-1508. Specifically, Osterhoudt challenges the district court's order allowing the State to present evidence of his uncharged misconduct over his objection and challenges the district court's ruling admitting recordings of his telephone conversations as substantive evidence. We affirm.

## I.

### FACTUAL AND PROCEDURAL BACKGROUND

Osterhoudt was arrested after his fifteen-year-old daughter, H.O., disclosed that he had been sexually abusing her. Osterhoudt was charged with five counts of lewd conduct with a minor under sixteen, one count of incest, and one count of rape. The case went to trial three times. The first trial resulted in a mistrial after the jury was unable to reach a unanimous

1

decision. Prior to the second trial, the State provided notice that it would seek to present evidence of prior bad acts committed by Osterhoudt pursuant to I.R.E. 404(b). Osterhoudt objected and an evidentiary hearing was held, wherein the State presented evidence demonstrating that when H.O. was five years old, she reported to authorities that Osterhoudt sexually abused her. The district court found that such evidence may become relevant if Osterhoudt presented evidence that H.O. recently fabricated the charged allegations. The district court also ruled that evidence that Osterhoudt had provided methamphetamine to H.O. when she was fourteen years old would be admissible for the purpose of showing that he "groomed" her for sex.

The second trial resulted in guilty verdicts on all seven counts against Osterhoudt. However, the district court granted a new trial after finding that the prosecutor committed misconduct during closing arguments. Prior to the third trial, the State again provided notice that it would seek to present evidence of prior bad acts, pursuant to I.R.E. 404(b), and the district court held that the previous court's ruling, made prior to the second trial, would apply to the third trial. Osterhoudt also filed a motion in limine to exclude recordings of telephone conversations between himself and defense witnesses that occurred while he was incarcerated. The State alleged that the telephone conversations demonstrated an effort by Osterhoudt and defense witnesses to coordinate their testimonies. The district court ruled, based on late disclosure, that the recordings would not be admitted in the State's case-in-chief.

During the third trial, H.O. testified that Osterhoudt sexually abused her between the ages of eleven and fourteen. She further testified that Osterhoudt regularly provided her with methamphetamine. Defense witnesses testified that H.O. fabricated the allegations because she was angry her father was forbidding her to see her nineteen-year-old boyfriend. In rebuttal, the State presented testimony from H.O. that she had reported sexual abuse by Osterhoudt when she was five years old.

Additionally, during cross-examination of defense witnesses, the witnesses implied that they had no discussions with each other or with the defendant regarding the coordination of their testimonies. Based on that testimony, the district court ruled that the recordings of the telephone conversations between Osterhoudt and defense witnesses had become relevant to show bias. Thereafter, over the objection of Osterhoudt, the State played the recordings to the jury.

The jury found Osterhoudt guilty of rape, incest, and two counts of lewd conduct with a minor under sixteen. The district court imposed a concurrent unified term of life with twenty-five years determinate for each count of lewd conduct and for the rape conviction. The court also imposed a concurrent determinate term of twenty-five years for the incest conviction. Osterhoudt appeals.

## II.

## ANALYSIS

Osterhoudt claims: (1) the district court erred by allowing the State to present evidence that he provided methamphetamine to H.O.; (2) the district court erred by allowing the State to present testimony that H.O. reported that she was sexually abused when she was five years old; (3) the district court erred by admitting into evidence the recordings of phone conversations between Osterhoudt and defense witnesses; and (4) the accumulation of errors deprived Osterhoudt of a fair trial. We discuss each issue in turn.

**A.      Providing Methamphetamine to H.O.**

Osterhoudt asserts that evidence he provided methamphetamine to H.O. was improper character evidence of prior bad acts. The evidence rule in question, I.R.E. 404(b), provides:

> Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that the person acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident, provided that the prosecution in a criminal case shall file and serve notice reasonably in advance of trial, or during trial if the court excuses pretrial notice on good cause shown, of the general nature of any such evidence it intends to introduce at trial.

This rule prohibits introduction of evidence of acts other than the crime for which a defendant is charged if its probative value is entirely dependent upon its tendency to demonstrate the defendant's propensity to engage in such behavior. *State v. Grist*, 147 Idaho 49, 54, 205 P.3d 1185, 1190 (2009); *see also State v. Avila*, 137 Idaho 410, 412, 49 P.3d 1260, 1262 (Ct. App. 2002). Of course, evidence of a prior crime, wrong, or act may implicate a person's character while also being relevant and admissible for some permissible purpose, such as those listed in the rule. *See State v. Pepcorn*, 152 Idaho 678, 688-89, 273 P.3d 1271, 1281-82 (2012).

When determining the admissibility of evidence to which a Rule 404(b) objection has been made, the trial court must first determine whether there is sufficient evidence of the other

acts that a reasonable jury could find the conduct actually occurred. If so, then the court must consider: (1) whether the other acts are relevant to a materially-disputed issue concerning the crime charged, other than propensity; and (2) whether the probative value is substantially outweighed by the danger of unfair prejudice. *Grist*, 147 Idaho at 52, 205 P.3d at 1188; *State v. Parmer*, 147 Idaho 210, 214, 207 P.3d 186, 190 (Ct. App. 2009). On appeal, this Court defers to the trial court's determination that there is sufficient evidence of the other acts if it is supported by substantial and competent evidence in the record. *Parmer*, 147 Idaho at 214, 207 P.3d at 190. In this case, Osterhoudt does not challenge the sufficiency of the evidence to allow a finding that he provided methamphetamine to H.O. Therefore, we address only the relevancy and unfair prejudice issues. However, we exercise free review of the trial court's relevancy determination. *State v. Sheldon*, 145 Idaho 225, 229, 178 P.3d 28, 32 (2008). The trial court's balancing of the probative value of the evidence against the danger of unfair prejudice will not be disturbed unless we find an abuse of discretion. *State v. Norton*, 151 Idaho 176, 190, 254 P.3d 77, 91 (Ct. App. 2011).

As discussed above, Osterhoudt objected to the use of I.R.E. 404(b) evidence. The district court held an evidentiary hearing wherein H.O. testified that Osterhoudt offered her methamphetamine on a regular basis from April 20, 2005, to November 30, 2006. She also testified that on two occasions, Osterhoudt used methamphetamine to bribe her to have sexual intercourse with him.[1] Additionally, she testified that she quit using methamphetamine in September of 2006, although Osterhoudt continued to offer her methamphetamine until she went into foster care on November 30, 2006.

Based on this testimony, the district court found that there was sufficient evidence for a reasonable jury to believe that Osterhoudt offered H.O. methamphetamine in exchange for sexual intercourse. Further, the district court found that the evidence was relevant to Count I which charged that Osterhoudt committed lewd conduct between November 1, 2006, and November 30, 2006,[2] because the evidence was "probative of a continuing criminal design by the defendant to cultivate a relationship with [H.O.] to induce her submission to his sexual demands." The court

---

[1] The first bribe occurred in June and the second bribe occurred in July. However, it is unclear from the record whether these bribes occurred in 2005 or 2006.

[2] Osterhoudt's other charges stemmed from events that occurred prior to April 2005, the date he allegedly started offering H.O. methamphetamine.

relied on the rationale of *State v. Blackstead*, 126 Idaho 14, 878 P.2d 188 (Ct. App. 1994) in reaching its conclusion. Additionally, the district court conducted an I.R.E. 403 balancing test and concluded that the probative value was not substantially outweighed by unfair prejudice.

On appeal, Osterhoudt claims evidence that he bribed H.O. with methamphetamine is not relevant to Count I because it alleges bribery prior to November 1, 2006. Therefore, he argues that the evidence is not tied to Count I but instead is only probative of his bad character. Osterhoudt also contends that the probative value, if any, is minimal and substantially outweighed by unfair prejudice. Additionally, Osterhoudt argues that the rationale in *Blackstead*, relied on by the district court, is questionable in light of the Idaho Supreme Court's decision in *Grist*.

We first address Osterhoudt's implication that the *Blackstead* analysis is no longer valid. In *Blackstead*, this Court determined evidence that the defendant provided the victim with drugs was relevant to a charge of lewd and lascivious conduct because it indicated an ongoing scheme to accomplish sexual contact with the victim. *Blackstead*, 126 Idaho at 19-20, 878 P.2d at 193-94. In that case, Blackstead engaged in three episodes of criminal conduct. In the first episode, the victim went to Blackstead's residence and Blackstead provided her with marijuana and "crank" and then engaged in sexual intercourse with her. Following the incident, Blackstead took the victim back to her house and gave her forty dollars and a bag of marijuana. Blackstead was charged with lewd conduct for this episode. The second episode occurred several days later when Blackstead went to the victim's house, provided her with more marijuana and "crank," asked her if she could "slip away," but the victim declined and no sexual contact occurred. Blackstead was not charged with criminal conduct for the second episode. The third episode occurred weeks later when Blackstead had more sexual contact with the victim. Blackstead was charged with lewd conduct for the third episode involving sexual contact. This Court held that evidence of Blackstead providing drugs to the victim during the second episode was relevant to the charge of lewd conduct stemming from the third episode because it was probative of Blackstead's "grooming" of the victim for sexual purposes. *Id.* at 20, 878 P.2d at 194.

Here, Osterhoudt implies that the *Grist* holding makes *Blackstead* obsolete. In *Grist*, the Idaho Supreme Court stated that "trial courts must carefully scrutinize evidence offered as 'corroboration' or as demonstrating a 'common scheme or plan' in order to avoid the erroneous introduction of evidence that is merely probative of the defendant's propensity to engage in

5

criminal behavior." However, the *Grist* decision did not eliminate the ability to admit evidence of a common scheme or plan if the evidence serves its articulated purpose. *Grist*, 147 Idaho at 55, 205 P.3d at 1191.

More to the point, in *State v. Truman*, 150 Idaho 714, 720, 249 P.3d 1169, 1175 (Ct. App. 2010), this Court upheld the rationale in *Blackstead*. In that case, this Court analyzed a similar issue regarding "grooming" and stated, "we find our decision in [*Blackstead*] to be instructive and to have continued applicability even in light of our Supreme Court's Rule 404(b) clarifications in *Grist* and [*State v. Johnson*, 148 Idaho 664, 227 P.3d 918 (2010)]." *Truman*, 150 Idaho at 720, 249 P.3d at 1175. In explaining how *Blackstead* survived *Grist*, we stated:

> What the *Grist* Court found to be problematic was the "exception" that had essentially been carved out of Rule 404(b) for child sex abuse cases--thus allowing other acts evidence to be admitted if the barest of similarities were present. *Blackstead*, however, did not rely on this "exception," but rather presented a reasoned analysis of the use of prior acts evidence for the purpose of showing a continuing criminal design ("grooming") as to the *same* victim, which the Court concluded was a permissible use of evidence for an objective other than demonstrating a defendant's character or propensity.

*Truman*, 150 Idaho at 722, 249 P.3d at 1177.

Next, we address Osterhoudt's contention that the evidence was not relevant to Count I because the methamphetamine bribes were not "tied" to the charges in Count I. Here, evidence was presented to the district court that Osterhoudt first provided methamphetamine to H.O. on April 20, 2005, and thereafter provided her with methamphetamine or offered her methamphetamine regularly until she went into foster care on November 30, 2006. H.O. testified that during this time period, Osterhoudt offered her methamphetamine in exchange for sexual intercourse on at least two specific occasions. H.O. also testified that she stopped using methamphetamine in September 2006, but nonetheless Osterhoudt continued to offer her methamphetamine until she went into foster care.

We conclude that evidence of Osterhoudt's act of providing methamphetamine to H.O. in exchange for sexual intercourse was admissible to show "grooming." It indicates that Osterhoudt repeatedly used a highly-addictive drug as a tool to obtain H.O.'s submission to his sexual demands. As discussed in *Blackstead*, evidence of Osterhoudt's use of methamphetamine as a tool to seduce H.O. and reward her for her submission is relevant to demonstrate the criminal design he employed to accomplish the acts he is criminally charged with. Even though

6

Osterhoudt did not provide H.O. with methamphetamine in November 2006--when the charged offense occurred--his previous pattern of providing H.O. with the addictive drug was relevant to show he was cultivating a controlling relationship over H.O., allowing him to sexually abuse her in November 2006. Therefore, similar to our determination in *Truman*, Osterhoudt's act of repeatedly offering H.O. methamphetamine demonstrates his continuing criminal design to achieve submission to his sexual demands. *See Truman*, 150 Idaho at 722, 249 P.3d at 1177 (holding that the defendant's sexual comments towards the victim, the act of showing the victim pornography, the use of rewards and punishments depending on whether the victim gave in to the defendant's sexual demands, and the sexual acts the two engaged in were admissible evidence to establish "grooming"). Thus, the evidence was relevant to demonstrate the criminal design used by Osterhoudt to enable him the opportunity to have sexual intercourse with H.O. during the time frame alleged in Count I.

Osterhoudt claims that the probative value of the evidence was substantially outweighed by its prejudicial effect. Osterhoudt argues that the evidence was prejudicial because it allowed the jury to consider his "ill character" rather than considering the evidence directly related to Count I. The district court recognized that the evidence was prejudicial, but found that the probative value was not substantially outweighed by prejudicial effect. Further, immediately following H.O.'s testimony regarding methamphetamine, the district court provided the jury with a limiting instruction:

> I just wanted to indicate to the jury that evidence has been introduced that the defendant has committed crimes, wrongs, or acts other than that for which the defendant is on trial. Such evidence if believed is not to be considered by you to pro[ve] the defendant's character or [that] the defendant has a disposition to commit crimes. Such evidence may be considered by you only for the limited purpose of proof o[f] plan to commit a charged offense in this case.

We presume that the jury followed the district court's instructions. *See State v. Kilby*, 130 Idaho 747, 751, 947 P.2d 420, 424 (Ct. App. 1997); *State v. Hudson*, 129 Idaho 478, 481, 927 P.2d 451, 454 (Ct. App. 1996). Therefore, based on the probative value of the evidence and the limiting instruction lessening the prejudicial effect, we conclude that the district court did not err in allowing evidence that Osterhoudt offered H.O. methamphetamine in exchange for sexual intercourse.

7

**B.     Prior Disclosure Evidence**

Osterhoudt claims the district court erred by allowing the State to present evidence, in rebuttal and pursuant to I.R.E. 404(b), that H.O. reported he engaged in sexual contact with her when she was five years old. Prior to the second trial, the State provided notice of its intent to present testimony that when H.O. was five years old she disclosed to authorities that Osterhoudt had sexually touched her (prior disclosure). The district court found that the prior disclosure and the instant charges were "too attenuated to establish relevance under [I.R.E.] 404(b)." However, the district court stated that if the defendant presented evidence at trial that H.O. "made up" the charged allegations because she was angry with Osterhoudt, then evidence of the prior disclosure may become relevant. As discussed above, this ruling was applied to the third trial as well.

At trial, defense counsel presented several witnesses who testified that H.O. fabricated the charges because she was angry with Osterhoudt for forbidding her from seeing her nineteen-year-old boyfriend. Thereafter, the State requested permission to present the prior disclosure. The district court ruled that the door had been opened for the prior disclosure to be admitted for the limited purpose of rebutting Osterhoudt's claim that H.O. fabricated the charges.

On appeal, Osterhoudt claims that the prior disclosure was not relevant because it did not actually rebut the allegation that H.O. fabricated the charges. Osterhoudt's defense theory was that H.O. had a motive to fabricate the charges in order to continue seeing her boyfriend. The prior disclosure directly rebuts this claim by showing that H.O. disclosed an incident of sexual abuse to authorities prior to the alleged motive to fabricate. As the district court stated, "there does not appear to be the presence of other improper motive" for H.O. to make the prior disclosure. Thus, the prior disclosure rebuts the allegation of recent fabrication and is relevant.

Further, even if H.O.'s testimony about the prior disclosure was improper rebuttal, the prior disclosure is still relevant to corroborate the testimony of Detective White. Detective White testified earlier in the trial that H.O. disclosed to authorities when she was five years old that Osterhoudt had touched her inappropriately. A witness's credibility is always relevant. *State v. Hairston*, 133 Idaho 496, 503, 988 P.2d 1170, 1177 (1999); *State v. Arledge*, 119 Idaho 584, 588, 808 P.2d 1329, 1333 (Ct. App. 1991). Accordingly, H.O.'s testimony about the prior disclosure is relevant to demonstrate Detective White's credibility.

Osterhoudt also claims that the probative value of the prior disclosure is substantially outweighed by unfair prejudice. He argues that the evidence is highly prejudicial because it

8

suggests that Osterhoudt sexually abused H.O. significantly longer than the charges alleged. The district court conducted an I.R.E. 403 analysis and concluded that the probative value was not substantially outweighed by unfair prejudice. We agree. First, the evidence is highly probative of H.O.'s credibility. The record demonstrates that Osterhoudt's defense focused on discrediting H.O. and alleging that she fabricated the charges. The prior disclosure shows that H.O. complained of sexual abuse well before her alleged motive to fabricate arose. Second, the prior disclosure was not highly prejudicial because a different witness had already testified about it. During the trial, the lead investigator, Detective White, provided testimony regarding her investigation into H.O.'s claims. When cross-examining Detective White, defense counsel initiated a line of questioning regarding her investigation tactics:

| DEFENSE COUNSEL: | Okay. And this is the first time that these allegations were disclosed to anyone, correct? |
| WHITE: | No, that's not true. |
| DEFENSE COUNSEL: | This was the first time to your understanding that these allegations had been disclosed; is that correct? |
| WHITE: | No, that's not true. |

Later, outside the presence of the jury, defense counsel objected, arguing that "this witness is trying to put before the jury uncharged [I.R.E.] 404(b) conduct." Based on defense counsel's entire cross-examination, the district court concluded that the door had been "kicked down" for the witness to testify about the prior disclosure. Accordingly, on redirect examination, the State asked Detective White when H.O. first disclosed the allegations. Defense counsel objected on the basis of hearsay, and the district court overruled the objection and provided the jury with a limiting instruction. Thereafter, Detective White testified that when H.O. was five years old, she disclosed that Osterhoudt sexually abused her.

Osterhoudt does not claim on appeal that the district court erred by allowing Detective White to testify about the prior disclosure; nor does he assert that the door was not opened to allow such testimony. Instead, he only complains that the district court erred when H.O. testified about the prior disclosure. However, given Detective White's testimony, Osterhoudt has not shown how H.O.'s own testimony about the prior disclosure would amount to prejudice as the evidence was already before the jury. Further, following H.O.'s testimony, the district court provided the jury with another limiting instruction. Therefore, based on the foregoing, we conclude that the district court did not err by allowing H.O. to testify about the prior disclosure.

9

## C.    Recordings of Telephone Conversations

Osterhoudt claims that the district court erred by allowing audio recordings of telephone conversations between Osterhoudt and defense witnesses to be admitted as substantive evidence. Osterhoudt argues that even if the recordings were admissible to show bias, they were still hearsay and should not have been admitted for the truth of the statements made. The State claims the issue is unpreserved because Osterhoudt did not request that the district court provide the jury with an instruction limiting the use of the recordings. Therefore, the State asserts Osterhoudt is required to meet the fundamental error standard.[3]

One of Osterhoudt's lewd conduct charges stemmed from an alleged incident that occurred the night of January 1, 2006. H.O. testified that on that night, she asked Osterhoudt if she could go to a movie with her friends. Osterhoudt allegedly told her that she could only go if she would have sex with him and then took her outside to the lambing shed and had sexual intercourse with her. Multiple defense witnesses testified that they were working in the lambing shed during the time H.O. claimed Osterhoudt had sex with her.

Following the defense's presentation of evidence, the State sought to admit, as rebuttal evidence, recordings between Osterhoudt and certain defense witnesses. The recordings contained statements from defense witnesses stating that the family discussed the case together, read and distributed letters to each other regarding Osterhoudt's "story," and "refreshed" each other's memories. Additionally, the recordings also contained statements about Osterhoudt's lambing shed. Specifically, the recordings indicated that the lambing shed did not contain any lambs on January 1, 2006, and that the lambing process generally began in February or March. This contradicted defense witnesses' testimonies indicating that they were working inside the lambing shed on January 1, 2006. Osterhoudt objected to the recordings on the basis of hearsay and relevance. The district court overruled the hearsay objection, finding that the recordings were presumably being admitted for impeachment purposes. The court also overruled the relevance objection, finding that the recordings were direct evidence of the witnesses' bias. In its ruling, the district court stated:

---

[3]    The fundamental error standard applies to unobjected to errors before the district court. *State v. Perry*, 150 Idaho 209, 226, 245 P.3d 961, 978 (2010).

10

We're talking about bias, and I guess to put it uncharitably and maybe the most extreme inference again, fabrication or concocting of testimony. The witnesses testified to that. Their motive, their bias is all relevant.

. . . .

So bias is not collateral and bias is not something that is limited necessarily by the impeachment rule of prior inconsistent statements. And here by bias we have an effort where an inference can be drawn strongly from these recordings that there was an effort to coordinate testimony which was denied directly on the stand.

So in this case, to exclude this evidence would be to hide some of the most relevant evidence about the truth of the witnesses['] testimony from the jury. It's not merely impeaching. It is hugely relevant if it is the type of evidence that is direct evidence.

Following the district court's ruling, the State published the recordings to the jury.

On appeal, Osterhoudt argues that the recordings were hearsay and therefore should not have been admitted for the truth of their content. Hearsay is defined as "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." I.R.E. 801(c). Based on our review of the record, we conclude that the statements were not inadmissible as hearsay. The recordings contained two types of statements--statements made by defense witnesses and statements made by Osterhoudt. The statements made by defense witnesses were not hearsay because they were not offered to prove the truth of the statements made on the recordings. Rather, the statements were offered to demonstrate the bias of the defense witnesses and to impeach their testimony that was inconsistent with statements in the recordings. Osterhoudt's own statements, pursuant to I.R.E. 801(d)(2), were not hearsay as they were statements made by a party-opponent. Pursuant to I.R.E. 801(d)(2), statements are not hearsay if the statement is offered against a party and is the party's own statement, in either an individual or a representative capacity. Therefore, the district court did not err in overruling Osterhoudt's hearsay objection.

Osterhoudt could have requested and received an instruction limiting the scope of the evidence to impeachment of defense witnesses. Whether a court is required to give a limiting instruction sua sponte is a question of law. *State v. Moore*, 131 Idaho 814, 823, 965 P.2d 174, 183 (1998). This Court reviews questions of law de novo. *Id.* Pursuant to I.R.E. 105,[4] the

---

[4]     Idaho Rule of Evidence 105 states:

11

district court is only required to give a limiting instruction when a party requests such an instruction. *Id.* Therefore, the district court did not err in failing to give a limiting instruction sua sponte.[5]

Additionally, Osterhoudt claims that the State used the recordings in their closing argument for a hearsay purpose as evidence of the truth of the statements in the recordings. During closing arguments, defense counsel argued that defense witnesses testified that they were working in the lambing shed on January 1, 2006, and that such testimony was not rebutted. In rebuttal closing argument, the prosecutor said, "That's not true. The tape recordings clearly rebut that testimony from a very good source: The defendant himself on that tape. And I would focus your attention to Exhibit 71 and 72, he said: There's no sheep. He said it wasn't lambing season." There was nothing impermissible in this argument. As explained above, Osterhoudt's own statements on the recordings were not hearsay and were admissible to prove the truth of the matter asserted. Therefore, the prosecutor was entitled to refer to Osterhoudt's own admissions on the tape as evidence that it was not lambing season and there was no one working in the lambing sheds.

**D. Cumulative Error**

Osterhoudt claims that the accumulation of errors at trial deprived him of a fair trial. The cumulative error doctrine refers to an accumulation of irregularities, each of which by itself might be harmless, but when aggregated, show the absence of a fair trial in contravention of the defendant's right to due process. *Moore*, 131 Idaho at 823, 965 P.2d at 183. The presence of errors alone, however, does not require the reversal of a conviction because, under due process, a defendant is entitled to a fair trial, not an error-free trial. *Id.* Osterhoudt has failed to show that two or more errors occurred in his trial, and therefore the doctrine is inapplicable in this case.

---

When evidence which is admissible as to one party or for one purpose but not admissible as to another party or for another purpose is admitted, the court, upon request, shall restrict the evidence to its proper scope and instruct the jury accordingly.

[5] *See also United States v. Multi-Management, Inc.*, 743 F.2d 1359, 1364 (9th Cir. 1984) ("It is well-settled that where no limiting instruction is requested concerning evidence of other criminal acts, the failure of the trial court to give such an instruction *sua sponte* is not reversible error.").

### III.

### CONCLUSION

Osterhoudt has failed to demonstrate reversible error in the district court's evidentiary rulings. Accordingly, Osterhoudt's judgment of conviction for rape, incest, and lewd conduct is affirmed.

Chief Judge GUTIERREZ **CONCURS.**

Judge LANSING, **CONCURRING IN THE RESULT**

I concur in all parts of the majority opinion except the conclusion in Section II(B) that H.O.'s testimony that she had reported sexual abuse by Osterhoudt when she five years old was relevant to rebut the defense allegation that H.O. had recently fabricated the allegations for which Osterhoudt was charged. According to the majority opinion, H.O.'s own testimony about the prior disclosure is relevant to rebut the defense claim that H.O. fabricated the charges after Osterhoudt forbade her to see her boyfriend. While I agree that evidence of a disclosure made prior to the alleged motive to lie would be relevant to rebut the defense claim, logic tells me that to be relevant such evidence must come from a source other than H.O.'s testimony.[1] Her own testimony about a prior disclosure cannot logically rebut a claim of recent fabrication because H.O.'s testimony in court is itself presented *after* the alleged motive to fabricate arose. What is needed to rebut a claim of recent fabrication is evidence from a source other than the testimony of the alleged fabricator showing that the alleged fabricator made the same or similar accusations before the existence of the motive to lie. If H.O. had a motive to fabricate at the time of trial, her testimony that she reported sex abuse at age five is just as likely to be fabricated as her testimony that she was sexually abused from ages eleven to fourteen. Logically, her trial testimony about a prior disclosure does not reduce the probability that H.O. is lying about the charged offenses.

The majority opinion holds, in substance, that H.O.'s testimony about the prior disclosure somehow corroborates her testimony about the subsequent abuse, but in my view that idea is without support and logic. The Idaho Supreme Court recently cautioned against admission of evidence for corroboration when it does not actually serve that function. In *State v. Grist*, 147

---

[1]     Indeed, our hearsay rule expressly provides that evidence of an out-of-court statement is not inadmissible hearsay if it is consistent with the declarant's testimony and offered to rebut a charge against a declarant of recent fabrication or improper influence or motive. Idaho Rule of Evidence 801(d)(1).

Idaho 49, 53-54, 205 P.3d 1185, 1189-90 (2009), the Court said: "[W]e wish to emphasize that evidence offered for the purpose of 'corroboration' must actually serve that purpose; the courts of this state must not permit the introduction of impermissible propensity evidence merely by relabeling it as 'corroborative' or as evidence of a 'common scheme or plan.'" The Court went on to define the verb "corroborate" in part by stating that "the testimony of a witness is said to be corroborated when it is shown to correspond with the representation of some other witnesses, or to comport with some facts otherwise known or established." *Id.* at 54, 205 P.3d at 1190 (quoting BLACK'S LAW DICTIONARY 311 (5th ed. 1979)). That definition requires that the corroboration come from a different witness or other independent source of facts and does not encompass one witness bolstering her own allegations by making some additional, different allegations. *See State v. Witmer*, 118 N.W.2d 510, 512 (Neb. 1962) ("If a witness testifies that criminal intercourse was had upon one day, the fact that she testifies that a like act was had upon another occasion does not corroborate her testimony.").

Fortunately for the State, however, there was other evidence of H.O.'s prior disclosure. As noted in the majority opinion, Detective White testified that H.O. had reported sexual abuse by Osterhoudt when she was five years old. That testimony, which is not challenged by Osterhoudt on appeal, plainly was relevant to rebut the defense theory that H.O. was motivated by Osterhoudt's impeding her relationship with her boyfriend. I conclude that after Detective White, an independent source of the information, had testified to the prior disclosure, H.O.'s own testimony verifying that she had disclosed abuse when she was five years old was at least marginally relevant to corroborate Detective White's testimony. I also concur with the majority's conclusion that the probative value of H.O.'s testimony on this point was not outweighed by the risk of unfair prejudice. Therefore, I concur in the ultimate conclusion that H.O.'s testimony was properly admitted, but only for the purpose of corroborating Detective White, and not for the purpose of corroborating herself by purportedly rebutting the defense theory of recent fabrication.

14